Kenneth Charles **TRENT**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 10–95–322–CR.

Court of Appeals of Texas,
Waco.

June 12, 1996.

Rehearing Overruled July 10, 1996.

Walter M. Reaves, Jr., West, for appellant.

John W. Segrest, Criminal District Attorney, Wayne Coughran, Lyle V. Gripp, Asst. District Attorneys, Waco, for appellee.

Before CUMMINGS and VANCE, JJ.

### OPINION

CUMMINGS, Justice.

Kenneth Charles Trent was charged and convicted of Driving While Intoxicated and sentenced to 10 years in prison. *See* TEX. PENAL CODE ANN. § 49.04 (Vernon 1994). Trent brings three points of error charging that the trial court erred: (1) in overruling his motion for a mistrial after the prosecutor injected the issue of punishment into the guilt-innocence portion of the trial; (2) in refusing to submit an instruction on the legality of his arrest; and (3) in overruling his motion for a mistrial after the arresting officer testified that Trent had called him a "nigger lover." For the following reasons, we affirm.

On the night of January 14, 1995, Kenneth Trent entered the Two Minnies topless nightclub. The manager, Bobby Montgomery, testified that after observing Trent, he asked him to leave the bar. He stated that the defendant was "pretty well loaded" and that he "was wobbling." He further commented that Trent "smelled like a brewery" and that the strength of the odor was enough to "kill a mule." A few minutes after Trent had exited the club, Montgomery was informed that there was a problem in the parking lot. When he went outside to investigate, Montgomery saw Trent driving his automobile at a high rate of speed off a curb and into the street. He stated that Trent turned around and came back down the street without his headlights on and failed to stop at a stop sign. Trent then pulled into a gravel parking lot across the street and began doing "donuts" by stepping "on the gas and constantly go[ing] around in circles, [and] pitching gravel...." Trent then drove his auto-

mobile into the entrance of the neighboring Pizza Hut business. He got out of his car and began to threaten and yell at Montgomery and a co-worker. Montgomery and the co-worker went across the street to the parking lot, and while Trent was distracted, Montgomery turned off the car and removed the keys. They then handcuffed Trent and called the police. When Officers Scott Gibbs and Robert Lanning of the Waco Police Department arrived at the scene, they testified that Trent smelled of alcohol and that he was swaying and slurring his speech and that his eyes were bloodshot. They also stated that Trent was belligerent and being verbally abusive. Gibbs testified that he removed the handcuffs and performed several field sobriety tests upon Trent, all of which he failed. Gibbs stated that he believed Trent was drunk, and therefore, he was rehandcuffed and taken to jail. At the police station, Trent was given a breathalyzer test. His blood-alcohol level registered at .238, over twice the legal limit.

In his first point, Trent complains that the trial court erred in overruling his motion for a mistrial after the prosecutor injected the issue of punishment into jury argument during the guilt-innocence portion of the trial.

After Trent's final argument at the guilt-innocence portion of the trial, the prosecutor made the following argument:

> [The State]: The defense wants you to consider the lesser included offense of public intoxication. First of all, you have not heard any evidence to believe that the Defendant was only publicly intoxicated. *First of all public intoxication is a class C misdemeanor, it is the same thing as you receiving a traffic ticket.*
> [The Defense]: I object to that argument, it is improper, your Honor.
> Court: Sustained.
> [The Defense]: Ask the jury to disregard, and ask that it be stricken from the record.
> Court: You are not to concern yourselves as to punishment, Ladies and Gentlemen, and you should disregard anything concerning that in determining guilt or innocence. You are to concern yourselves merely with the evidence in this portion of the case. You may proceed.

> [The Defense]: The defendant moves for a mistrial at this time, your Honor.
> Court: Motion for mistrial is denied.
> [The State]: Public intoxication requires that you find that the defendant appeared in a public place intoxicated to the degree that he may have endangered himself or others. DWI requires in essence, public intoxication, being intoxicated but also while operating a motor vehicle. They wish for you to totally disregard all of the evidence that he was operating a motor vehicle, or just kind of pass it off, that he was only operating it for maybe a minute, or a minute and a half, until they could get the keys away from him . . . .

(Emphasis added).

▉ As a general rule, punishment may not be discussed by either side at the guilt-innocence portion of the trial. *Garcia v. State*, 887 S.W.2d 862, 877 (Tex.Crim.App. 1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1368, 131 L.Ed.2d 223 (1995). During the first phase of the trial, the jury is limited to determining if the defendant committed an offense. If the defendant is convicted, the second phase of the trial deals with the punishment available for that conviction.

Trent argues that discussing the range of punishment renders an argument improper. He suggests that equating the offense of public intoxication with a traffic ticket injects the issue of punishment into the guilt-innocence portion of the trial. He claims that although the prosecutor did not specifically set forth the range of punishment for public intoxication, he accomplished this goal by comparing the offense to a traffic violation. He states that most jurors have either received a ticket for a traffic offense or know of someone who has. Because of that, it can be presumed that everyone knows the only available punishment for such an offense is a fine. As a result, he argues that the prosecutor indirectly informed the jury that it had a choice of convicting the defendant of either an offense that carried jail time or one which was punishable by fine only.

However, we do not need to determine whether the statement was improper. Since

the trial court sustained the objection and instructed the jury to disregard, we will limit our review to determining whether the trial court erred in denying a mistrial.

█ The prosecution argues that any harm was cured by the court's instruction to disregard. Generally, once an objection has been sustained and an instruction given, an error does not occur unless the remark was so inflammatory that its prejudicial effect could not be reasonably removed from the minds of the jurors by the instruction given. *See Kinnamon v. State,* 791 S.W.2d 84, 89 (Tex.Crim.App.1990); *Washington v. State,* 822 S.W.2d 110, 118 (Tex.App.—Waco 1991), *rev'd on other grounds,* 856 S.W.2d 184 (Tex. Crim.App.1993).

Trent relies on *McClure v. State,* 544 S.W.2d 390, 393–94 (Tex.Crim.App.1976), for the proposition that the harm was not cured by the court's instruction to disregard. However, we can distinguish the present case. During jury argument in *McClure,* the prosecution continually stressed the penalty differences between the misdemeanor and felony offenses. The Court of Criminal Appeals found that the argument was improper because "it was a plea to the jury to consider the amount of punishment, rather than the facts, in determining the offense for which appellant should be convicted." In finding that the instruction to disregard did not cure the harm, the Court stated that the prosecutor repeatedly referred to punishment in the guilt-innocence portion of trial over the objections and instructions by the court.

In the present case, while the court ruled that comparing public intoxication to a traffic ticket was objectionable, we find that the trial court cured any harm by instructing the jury to disregard any statements that dealt with punishment in the guilt-innocence portion of the trial. We find that the statement was mentioned fleetingly. The prosecutor did not bring the issue up again after the objection was sustained and the instruction to disregard was given to the jury. We find that the statement was not so inflammatory that it could not be cured by an instruction to disregard from the trial court. Trent's first point is overruled.

█ In his second point, Trent complains that the trial court erred in refusing to submit an instruction on the legality of his arrest. Trent argues that if the jury found that his arrest was illegal, anything seized as a result of that arrest would be inadmissible. Trent cites article 38.23 of the Texas Code of Criminal Procedure for the proposition that when an issue has been raised as to whether evidence was obtained by an officer or any other person in violation of the federal or state constitutions, the jury must be instructed on the legality of the arrest and its effect on the admissibility of the evidence. TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (Vernon Supp.1996); *Reynolds v. State,* 848 S.W.2d 148, 149 (Tex.Crim.App.1993). While Trent concedes that he did not present any controverting evidence on the legality of the arrest, he claims that he sufficiently attacked the credibility of Montgomery to require an instruction. Trent argues that Montgomery did not have sufficient probable cause to arrest him.

A citizen other than a police officer may make an warrantless arrest for a misdemeanor offense when the individual commits a breach of the peace. TEX.CODE CRIM. PROC. ANN. art. 14.01(a) (Vernon 1977); *Heck v. State,* 507 S.W.2d 737, 740 (Tex.Crim.App. 1974). Driving While Intoxicated, as well as Public Intoxication, has been found to be a breach of the peace, which allows a citizen other than a police officer to make an arrest without a warrant. *Romo v. State,* 577 S.W.2d 251, 253 (Tex.Crim.App.1979); *Heck,* 507 S.W.2d at 740. However, the prosecution is still required to show that the private citizen had probable cause to make the arrest. TEX.CODE CRIM. PROC. ANN. art. 38.23(a) (Vernon Supp.1996).

█ On cross-examination, Trent attempted to show that Montgomery did not observe him long enough to establish probable cause that he was committing a breach of the peace. After reviewing the evidence, we find that this argument has no merit. Montgomery testified that he had worked at the club for almost 19 years and was quite familiar with dealing with intoxicated persons. Moreover, he stated that Trent could not keep his balance and that he smelled so badly of alcohol that he could "kill a mule." In addi-

tion, when he went outside, he observed Trent run his car off a curb, drive down a public street without headlights, and run a stop sign. Furthermore, he observed Trent perform "donuts" in a gravel parking lot and shout obscenities and threats at him and one of his employees. We find that Montgomery had probable cause to arrest Trent.

■ Regardless, even if Montgomery did not have probable cause to arrest the defendant, the police officers had probable cause to arrest him without a warrant because he committed the offense of public intoxication within their presence. TEX.CODE CRIM. PROC. ANN. art. 14.01(b). Officers Gibbs and Lanning both testified that Trent appeared drunk, smelled of alcohol and was belligerent. Moreover, Officer Gibbs testified that he failed his field sobriety tests. Based upon this evidence and the statements of Montgomery, the police officers had probable cause to make a legal arrest.

■ In order for a defendant to be entitled to an instruction on the legality of an arrest, the issue must first be raised before the jury. *Jordan v. State,* 562 S.W.2d 472, 472 (Tex.Crim.App.1978). Since Trent did not call any witnesses to controvert the testimony of the State's witnesses with respect to the events and circumstances at the time of the arrest, and the cross-examination did not raise any fact issues on the right to arrest, he was not entitled to an instruction on the legality of the arrest. *Rose v. State,* 470 S.W.2d 198, 200 (Tex.Crim.App.1971). Trent's second point is overruled.

■ In his third point, Trent argues that the trial court erred in overruling his motion for a mistrial after the arresting officer testified that the defendant had called him a "nigger lover." Prior to trial, Trent filed a motion in limine concerning seven enumerated matters, with number 6 being an alleged statement he made at the jail in which he stated, "I don't trust no niggers to be doing my test." The trial court ruled on the motion and stated:

> Number 6 is also granted in regard to this particular statement in reference to the word niggers. You are going to need to approach if you feel that is relevant, and

not prejudicial, if it's other statements, res gestae statements have been asked to be liminied out. So 1–6 are granted. 7 is denied.

At trial, Officer Gibbs testified concerning his observations of Trent at the arrest scene and as he was being transported to jail. When asked if Trent was calling him names, Officer Gibbs responded:

> [Officer Gibbs]: He had told me that since I started wearing blue that I had turned into-

> [The Defense]: This is irrelevant, your Honor.

> Court: The objection is overruled.

> [Officer Gibbs]: He had told me that since I had started wearing blue, that I had turned into, and excuse me, a nigger lover. He cussed me all the way to the jail, calling me a variety of names.

> [The State]: What do you mean by wearing blue?

> [Officer Gibbs]: I guess he meant by the fact that I was wearing a Waco Uniform.

We find that Trent has waived this point. Trent failed to make a timely and specific objection to the testimony. TEX.R.APP. P. 52(a). The defendant objected on grounds of relevance prior to the witness's full response. After the court overruled the relevancy objection, Trent failed to make a further objection until he moved for a mistrial after the State had rested. Failure to make a timely and specific objection at the time the testimony was heard deprived the trial court the opportunity to make a ruling on the complained of point and to take corrective action. TEX.R.APP. P. 52(a); *Janecka v. State,* 823 S.W.2d 232, 243–44 (Tex.Crim.App.1990). Trent's third point is overruled. The judgment of the trial court is affirmed.