Michael John Yeager v. State of Texas
















IN THE
TENTH COURT OF APPEALS
 

No. 10-99-105-CR

     MICHAEL JOHN YEAGER,
                                                                         Appellant
     v.

     THE STATE OF TEXAS,
                                                                         Appellee
 

From the County Criminal Court No. 10
Tarrant County, Texas
Trial Court # 0706938
                                                                                                                
                                                                                                            
O P I N I O N
                                                                                                                
   
      Does article 14.03(g) of the Code of Criminal Procedure authorize a peace officer to
conduct an investigative detention while outside of his geographic jurisdiction to determine if
there is probable cause to believe that an offense has been “committ[ed] within [his] presence
or view”? The trial court concluded that it does and denied Michael Yeager’s motion to
suppress. We decide that an officer must have probable cause to arrest before he can detain a
citizen under article 14.03 when outside of his geographic jurisdiction; thus, we find that the
investigative detention by the police in this case was impermissible. We will reverse the
judgment.
The Stop, Arrest, and Prosecution
      At approximately 10:00 p.m. on Friday, September 11, 1998, two Pantego Village police
officers, Brian Harris and Jon Coduti, observed Yeager leave the parking lot of a bar on
Arkansas Lane. As Yeager made his turn onto Arkansas Lane, the officers could see that he
turned too wide, running off of the paved portion of the road and nearly driving his car into a
ditch that bordered the street. At the point where Yeager entered Arkansas Lane, both the
street and the ditch were within the Pantego Village municipal limits.
      Harris believed he could stop Yeager to investigate whether he was driving while
intoxicated at the time that Yeager almost ran into the ditch. However, the officers did not
initiate such a stop in Pantego Village so that Coduti, a reserve officer in training, could
observe Yeager and evaluate his driving. The officers followed Yeager along Arkansas Lane
and into the City of Arlington, crossing the city-limits line approximately one-sixteenth to one-eight of a mile after they began following Yeager. Once in Arlington, Yeager turned north on
Fielder Road. Harris and Coduti continued to follow Yeager, going deeper into Arlington. 
Shortly before Pioneer Parkway, Yeager suddenly swerved from the inside lane of the road to
the outside lane, narrowly missing another vehicle. Believing that Yeager was a danger to
others on the road, Harris decided to stop him so that the officers could investigate whether
Yeager was driving while intoxicated. The officers activated their overhead emergency lights,
and ultimately their siren as well, and stopped Yeager approximately one-half to three-fourths
of a mile into the City of Arlington. Based on Yeager’s appearance, speech, odor of an
alcoholic beverage, and performance in a series of field sobriety tests, Harris concluded that he
had probable cause to arrest Yeager for the offense of driving while intoxicated. Tex. Pen.
Code Ann. § 49.04 (Vernon Supp. 2000). After his arrest, the officers took Yeager to the
Arlington City Police Department for an intoxilyzer test and videotaping because the City of
Arlington had the necessary equipment, and then back to the Pantego Village Police station for
processing.
      Yeager was charged with DWI as a result of the investigation by Harris and Coduti. He
sought to suppress all of the evidence obtained as a result of the investigation on the theory that
the officers did not have the authority to detain or arrest him outside of their own geographic
jurisdiction. At the hearing on his motion to suppress, Officers Harris and Coduti testified. 
The parties stipulated both that Pantego Village is a Type “B” municipality


 and that Yeager
was arrested without a warrant. After the trial court denied his written pretrial motion to
suppress, Yeager pled guilty and this appeal followed. 
The Appeal
       Before us, Yeager again asserts that evidence obtained after he was stopped should have
been suppressed because the officers did not have the authority to detain him outside of their
own geographic jurisdiction. In reply, the State concedes that the officers were outside their
geographic jurisdiction, but argues that both the detention and arrest of Yeager were lawful
under article 14.03 of the Code of Criminal Procedure or, alternatively, the “hot pursuit”
doctrine. Tex. Code. Crim. Proc. Ann. art. 14.03 (Vernon Supp. 2000); Preston v. State,
700 S.W.2d 227, 229 (Tex. Crim. App. 1985).
      Because Yeager complains about the trial court’s ruling on a motion to suppress, we apply
the standard of review set out in Guzman v. State, 955 S.W.2d 85, 87 (Tex. Crim. App.
1997). Carmouche v. State, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); Harris v. State,
994 S.W.2d 927, 929-30 (Tex. App.—Waco 1999, pet. ref’d). We give almost total deference
to the trial court’s determination of historical fact, but review its application of the law of
search and seizure de novo. Id. The trial court did not make explicit findings of fact to
support its ruling; thus, if necessary, we are to assume that it made whatever findings that the
record supports to buttress its ruling. Carmouche, 10 S.W.3d at 328.
      Resolution of the issue of the officers’ extra-jurisdictional authority turns on the
application of Texas common law and her statutes, not on federal constitutional principles. 
The states are free to impose greater restrictions on their law enforcement agents than are
required by the United States Constitution. Milton v. State, 549 S.W.2d 190, 192 (Tex. Crim.
App. 1977). Texas has done so in a number of ways, one of which is particularly relevant to
this proceedings—Texas common law and her statutes limit where a police officer may exercise
the authority of his office. 
The Limits of the Officers’ Jurisdiction
      As a general matter, peace officers may exercise law enforcement powers only within their
jurisdiction.


 Dominguez v. State, 924 S.W.2d 950, 953-54 (Tex. App.—El Paso 1996, no
pet.); cf. Tex. Code Crim. Proc. Ann. art. 2.13 (Vernon Supp. 2000) (“It is the duty of
every peace officer to preserve the peace within the officer’s jurisdiction.” (Emphasis added)). 
The scope of an officer’s jurisdiction must be found in a statute or be controlled by common
law. Angel v. State, 740 S.W.2d 727, 732 (Tex. Crim. App. 1987); see also Tex. Code
Crim. Proc. Ann. art. 1.27 (Vernon 1977). There are no statutes specifically controlling the
jurisdiction of a police officer of a Type “B” municipality such as the officers of Pantego
Village. See Tex. Loc. Gov’t Code Ann. Chapter 341 (Vernon 1999 & Supp. 2000);
Reamey & Harkins, Warrantless Arrest Jurisdiction in Texas: An Analysis And A Proposal, 19
St. Mary’s L.J. 857, 880 (1988). Therefore, the jurisdiction of a Type “B” municipality
police officer is controlled by common law. At common law, a city police officer’s authority
ends at the city limits. Landrum v. State, 751 S.W.2d 530, 531 (Tex. App.—Dallas 1988),
pet. ref’d per curiam, 795 S.W.2d 205 (Tex. Crim. App. 1990); Love v. State, 687 S.W.2d
469, 471 (Tex. App.—Houston [1st Dist.] 1985, pet. ref’d), overruled on other grounds, Angel
v. State, 740 S.W.2d 727 (Tex. Crim. App. 1987). Thus, the State has correctly conceded that
Harris and Coduti were outside of their jurisdiction when they detained Yeager for
questioning.


 Because Harris and Coduti were outside of their jurisdiction, before we can
sustain the legality of the detention and arrest we must find either (1) the legislature has
extended these officers’ geographic authority by statute or (2) a common-law basis for such an
extension. See Angel, 740 S.W.2d at 732; Landrum, 751 S.W.2d at 531.
Article 14.03: A Limited Grant of Extra-Jurisdictional Authority
      We turn first to the Texas statutes to determine if the Legislature has extended these
officers’ geographic authority. Subsections (d) and (g) of Article 14.03 of the Texas Code of
Criminal Procedure are authority-extending provisions. These subsections provide:
Art. 14.03. Authority of peace officers.

* * * 
 
      (d)  A peace officer who is outside his jurisdiction may arrest, without warrant, a person
who commits an offense within the officer's presence or view, if the offense is a
felony, a violation of Title 9, Chapter 42, Penal Code, a breach of the peace, or an
offense under Section 49.02, Penal Code. A peace officer making an arrest under this
subsection shall, as soon as practicable after making the arrest, notify a law
enforcement agency having jurisdiction where the arrest was made. The law
enforcement agency shall then take custody of the person committing the offense and
take the person before a magistrate in compliance with Article 14.06 of this code.

* * * 
      (g)  A peace officer listed in Subdivision (1), (2), (3), (4), or (5), Article 2.12,[


] who is
licensed under Chapter 415, Government Code, and is outside of the officer's
jurisdiction may arrest without a warrant a person who commits any offense within
the officer's presence or view, except that an officer who is outside the officer's
jurisdiction may arrest a person for a violation of Subtitle C, Title 7, Transportation
Code, only if the officer is listed in Subdivision (4), Article 2.12. A peace officer
making an arrest under this subsection shall as soon as practicable after making the
arrest notify a law enforcement agency having jurisdiction where the arrest was made. 
The law enforcement agency shall then take custody of the person committing the
offense and take the person before a magistrate in compliance with Article 14.06.
 
Tex. Code Crim. Proc. Ann. art. 14.03(d), (g). These sections apply to Officers Harris and
Coduti because police officers of an incorporated city, town or village are included within the
definition of “peace officers” in subsection (3) of Article 2.12 of the Code of Criminal
Procedure. Id. art. 2.12(3) (Vernon Supp. 2000). Therefore, Harris and Coduti had the
                                                                                                  authority to arrest
Yeager in Arlington if any offense other than a traffic violation


 occurred within their presence
or view.
      An arrest under these sections requires probable cause to believe that an offense has been
committed. See Amores v. State, 816 S.W.2d 407, 413 (Tex. Crim. App. 1991); Zayas v.
State, 972 S.W.2d 779, 788 (Tex. App.—Corpus Christi 1998, pet. ref’d). The plain language
of the statute, providing that the offense must occur “within the officer’s presence or view,”
appears to add the requirement that the officer base her probable-cause determination on
personal knowledge, not second hand information presented by a third party. See Thomas v.
State, 864 S.W.2d 193, 196 (Tex. App.—Texarkana 1993, pet. ref’d). However, because all
of the information that Harris and Coduti acted on came from their personal observations we
need not decide if the statute requires “personal-knowledge” probable cause. Rather, we
assume that probable cause from any source would satisfy its provisions. See Amores, 816
S.W.2d at 413.
      Neither Harris nor Coduti testified to facts that would establish probable cause to arrest
Yeager at the time of the initial detention in Arlington. In fact, Harris specifically testified that
they did not have probable cause to arrest Yeager until after the stop. Thus, the record
conclusively establishes that the officers developed probable cause to arrest Yeager for driving
while intoxicated only after the detention.
      An unlawful detention cannot be justified by the evidence obtained as a result of the
detention. See State v. Ballard, 987 S.W.2d 889, 892 (Tex. Crim. App. 1999); Gurrola v.
State, 877 S.W.2d 300, 302 (Tex. Crim. App. 1994). For this reason, the focus of our inquiry
must remain on the statutory authority of the officers to detain Yeager outside of their
jurisdiction in the absence of probable cause to arrest him. See Angel, 740 S.W.2d at 732;
Landrum, 751 S.W.2d at 531.
Article 14.03 Authorizes Only an Arrest by the Plain Meaning of its Terms
      We do not believe that article 14.03 itself grants a peace officer the right to conduct an
investigative detention outside of her jurisdiction. On its face, the statute specifically grants
only the authority to “arrest,” a term that is both defined by statute and recognized by case law
as having a specific meaning. Tex. Code Crim. Proc. Ann. art. 15.22 (Vernon 1977);
Johnson v. State, 912 S.W.2d 227, 235-236 (Tex. Crim. App. 1995) (distinguishing between
an arrest and an investigative detention). When analyzing the meaning of a statute, we must
give effect to the plain meaning of the statute's language unless that plain meaning would lead
to absurd consequences that the Legislature could not possibly have intended. Cannady v.
State, 11 S.W.3d 205, 217 (Tex. Crim. App. 2000); Boykin v. State, 818 S.W.2d 782, 785
(Tex. Crim. App. 1991). Limiting the authority of an officer who is out of his own bailiwick
to arrests based on probable cause is not an absurd consequence that could not have been
intended. We can readily understand why the Legislature would choose not to allow an
officer, who may be in plain clothes driving a private vehicle a thousand miles away from his
home jurisdiction, the authority to conduct investigative detentions at any time that he
reasonably suspects criminal activity may be afoot.

Interpretations, Applications, and the Legislative History of Article 14.03 Recognize Its
Limited Grant of Authority

      Furthermore, our conclusion that the authority conferred by section 14.03 is limited to
making an actual arrest based on probable cause is supported by authorities other than the plain
language of the statute. The Court of Criminal Appeals recently considered whether cocaine
purchased by an officer in the course of an undercover investigation outside of his jurisdiction
should have been suppressed as “evidence obtained . . . in violation of the . . . laws of the
State of Texas” under article 38.23 of the Code of Criminal Procedure. Tex. Code. Crim.
Proc. Ann. art. 38.23 (Vernon Supp. Pamp. 2000); Chavez v. State, 9 S.W.3d 817, 818 (Tex.
Crim. App. 2000). The Court ultimately concluded that Chavez did not have standing to
complain about the seizure of the cocaine because her rights were not violated by the purchase



and that the cocaine had not been “obtained” in violation of the law. Chavez, 9 S.W.3d at
819, 820. The Court did not rely on article 14.03 as authority for the officer to conduct the
extra-jurisdictional investigation of Chavez. Moreover, two concurring judges appear to have
acknowledged that the officer was acting illegally (i.e., without authorization by the Code of
Criminal Procedure) when he purchased the cocaine, id. at 820 (Keller, J. concurring), and the
two dissenting judges specifically concluded that article 14.03 did not apply because Chavez
complained of the officer’s “investigation of her, not her arrest[.]” Id. at 829 (Holland, J.,
dissenting). Thus, we believe that the Court of Criminal Appeals has recognized, although
without explicitly holding, that article 14.03 authorizes only extra-jurisdictional arrests, not
investigations. Id. at 819-20.
      Second, other interpretations of article 14.03 limit an officer’s authority. The Texas
Attorney General considered in Opinion No. DM-77 whether article 14.03 granted state-wide
investigative authority to a county sheriff. Op. Tex. Att’y Gen. No. DM-77 (1992). 
Observing “the thrust of article 14.03(d) is to define rather narrowly the limits of a peace
officer’s authority outside his own jurisdiction,” the Attorney General concluded that “a sheriff
does not have any general authority to conduct investigations outside his county.” Id. at 2, 3. 
      Similarly, in Thomas the Texarkana Court of Appeals found, in effect, that article 14.03
does not extend an officer’s authority other than to make an arrest within the strict parameters
of the article. Thomas, 864 S.W.2d at 193. There, the defendant was charged with
aggravated assault arising out of his confrontation with an out-of-county police officer. Id. at
195. A witness told the officer that Thomas had tried to steal several tires. Id. Thomas
attacked the officer with a knife when the officer attempted to detain him. Id. Because the
officer acted only upon the statement of the witness, not upon his personal observation, the
court found that the officer’s authority was that of a private citizen during the first
confrontation, not that of a peace officer under article 14.03(d). Id. at 196. However, a
private citizen’s statement to an officer that reports an offense and identifies the offender is
sufficient to establish probable cause to arrest. Cornejo v. State, 917 S.W.2d 480, 483 (Tex.
App.—Houston [14th Dist.] 1996, pet. ref’d). Such a statement would plainly suffice to
establish reasonable suspicion to detain a person for investigation. See State v. Stolte, 991
S.W.2d 336, 340-41 (Tex. App.—Fort Worth 1999, no pet.). Thus, because the Texarkana
Court found that the officer was acting as a private citizen when he first approached Thomas,
we believe it necessarily found that the officer was not authorized by article 14.03 to make an
investigative detention.
      Finally, we believe that the legislative history of the 1995 amendment to article 14.03,
which added subsection (g), supports the conclusion that the Legislature did not intend to
extend state-wide police power to every enumerated peace officer in Texas. As initially
submitted, the bill included a provision which would have amended article 2.13 to provide that
peace officers had the duty to “preserve the peace within this state.” Tex. H.B. 2614, 74th
Leg., R.S. (1995). However, that language was amended out of the bill before passage. Act
of May 28, 1995, 74th Leg., R.S., ch. 829, 1995 Tex. Gen. Laws 4213-14. This is some
evidence that the Legislature did not intend to extend state-wide investigative authority to the
officers when it added article 14.03(g).
Other Possible Statutory Sources for Extra-Jurisdictional Authority
      There are several other statutory “candidates” for the source of an officer’s authority to
make extra-jurisdictional investigative detentions. Officers arresting under 14.03 are “justified
in adopting all the measures which [they] might adopt in cases of arrest under warrant[.]” 
Tex. Code Crim. Proc. Ann. art. 14.05 (Vernon Supp. 2000). This statute, however, only
applies in situations where “arrests may be lawfully made without warrant” under Chapter 14. 
Id. Because article 14.03 requires probable cause before an officer may detain a suspected
offender outside of the officer’s jurisdiction, an extra-jurisdictional arrest may not be “lawfully
made” when the original detention is based on less than probable cause. Thus, this article does
not serve to lessen the degree of suspicion necessary under article 14.03 to support the
officers’ extra-jurisdictional actions.
      Similarly, article 2.13 of the Code of Criminal Procedure, which provides the “duties and
powers” of peace officers, does not support Yeager’s detention. Tex. Code Crim. Proc.
Ann. art. 2.13. In relevant part, the statute provides:
Art. 2.13. Duties and powers
 
            (a) It is the duty of every peace officer to preserve the peace within the
officer's jurisdiction. To effect this purpose, the officer shall use all lawful
means.

            (b) The officer shall:
 
                  (1) in every case authorized by the provisions of this Code, interfere
without warrant to prevent or suppress crime;

* * *
 
                  (4) arrest offenders without warrant in every case where the officer
is authorized by law, in order that they may be taken before the
proper magistrate or court and be tried.

Id. We do not believe that this section applies to the detention of Yeager for several reasons. 
First, subsection (b) does not create a duty or a power independent of subsection (a). 
Subsection (b) merely lists the “lawful means” which an officer has the duty to employ in
keeping the peace in his jurisdiction. Secondly, to determine that subsection (b) supports the
officers’ detention of Yeager begs the question. The issue is whether the officers’ actions are
“authorized by the provisions of this Code” or are “authorized by law.” Thus, article 2.13
does not support a conclusion that the officers were authorized to detain Yeager outside of
their jurisdiction on anything less than probable cause. 
      Article 14.01(b), permitting a peace officer to arrest an offender for any offense
committed in his presence or within his view, appears to grant state-wide authority. Tex.
Code Crim. Proc. Ann. art. 14.01(b) (Vernon 1977). However, the Court of Criminal
Appeals has limited the application of this article to actions taken within the officer’s
jurisdiction because the statute does not define the geographic scope of the authority it
bestows. Angel, 740 S.W.2d at 732; Dominguez, 924 S.W.2d at 954; Reichaert v. State, 830
S.W.2d 348, 350 (Tex. App.—San Antonio 1992, pet. ref’d). Therefore, article 14.01(b) does
not validate the extra-jurisdictional detention of Yeager by the Pantego Village police officers.
      Finally, some cases have analyzed actions by peace officers outside of their jurisdiction
under article 14.01(a), which authorizes any person to arrest for any felony or breach of the
peace which occurs within their presence or view, as if the officer were a private citizen. Tex.
Code. Crim. Proc. Ann. art 14.01(a); Romo v. State, 577 S.W.2d 251, 253 (Tex. Crim.
App. [Panel Op.] 1979); Garner v. State, 779 S.W.2d 498, 500-01 (Tex. App.—Fort Worth
1989), pet. ref’d per curiam, 785 S.W.2d 158 (Tex. Crim. App. 1990). Driving while
intoxicated is a breach of the peace. Romo, 577 S.W.2d at 253; Trent v. State, 925 S.W.2d
130, 133 (Tex. App.—Waco 1996, no pet.). However, an arrest by a private citizen must be
based on probable cause. Trent, 925 S.W.2d at 133; McGuire v. State, 847 S.W.2d 684, 686
(Tex. App.—Houston [1st Dist.] 1993, no pet.). Private citizens do not have the authority to
make an investigative detention under article 14.01. Garner, 779 S.W.2d at 501. Thus, even
if we were to analyze Yeager’s detention as if the officers were acting in a private capacity, we
would still find the investigative detention illegal. 
      In summary, we can find no statute which would validate the actions of the officers in
detaining Yeager outside their jurisdiction, although we have considered several provisions. 
No other provision has been suggested by the State. Thus, we conclude that the officers did
not have statutory authority to conduct an investigative detention outside the limits of Pantego
Village. We turn, then, to the common-law basis for the authority proposed by the State.
Non-Statutory Basis for the Detention: The “Hot Pursuit” Doctrine
      As we have noted, a city police officer’s authority ends at the city limits under Texas
common law. Landrum, 751 S.W.2d at 531. The State argues, however, that the officers
were entitled to detain Yeager under the common law “hot pursuit” doctrine. Under this
principle, officers who are drawn outside of their jurisdiction while in “hot pursuit” of a
fleeing suspect do not lose their authority to detain and arrest the suspect. Preston, 700
S.W.2d at 229; Duenez v. State, 735 S.W.2d 563, 565 (Tex. App.—Houston [1st Dist.] 1987,
pet. ref’d). The test for hot pursuit focuses on the immediate and continuous nature of the
pursuit, and it applies to situations involving a continuous pursuit where there is no break in
the police effort to apprehend or in the subject’s effort to escape. LaHaye v. State, 1 S.W.3d
149, 153 (Tex. App.—Texarkana 1999, pet. ref’d); Jimenez v. State, 750 S.W.2d 798, 803
(Tex. App.—El Paso 1988, pet. ref’d) (citing Minor v. State, 153 Tex. Crim. 242, 219
S.W.2d 467 (1949)).
      The State concedes that the “pursuit” of Yeager did not involve Yeager’s disregarding a
police order to stop, but argues that there is no necessity for an “extended hue and cry, just a
chase, however brief,” citing United States v. Santana, 427 U.S. 38, 43, 96 S.Ct. 2406, 2410,
49 L.Ed.2d 300 (1976). As the United States Supreme Court recognized in Santana, though,
“‘hot pursuit’ means some sort of a chase.” Id. Here, the officers testified that they were not
seeking to stop Yeager until well after they left the limits of their jurisdiction.


 Although the
officers thought they could stop him before, they made no attempt to do so and did not testify
that they intended to do so before leaving the confines of their jurisdiction. Rather, they
followed Yeager out of their jurisdiction for the purpose of observing him, not for the purpose
of detaining him. The doctrine of hot pursuit does not apply because there was no “pursuit”
initiated within the officers’ jurisdiction.
The Motion to Suppress Should Have Been Granted
      Evidence obtained by an officer or other person in violation of the law of the State of
Texas, which also affects a defendant’s rights, is inadmissible at trial. Tex. Code Crim.
Proc. Ann. art. 38.23(a); Chavez, 9 S.W.3d at 819. Although acting in good faith, the
officers impermissibly used the power of their office to detain and investigate Yeager outside
of their jurisdiction in violation of Texas law. Dominguez, 924 S.W.2d at 956. Their action
in detaining and further investigating Yeager infringed on Yeager’s constitutionally and
statutorily protected right to be left alone by the state and his statutorily protected right to be
free, subject to narrowly tailored exceptions, from a warrantless arrest. See Carmouche, 10
S.W.3d at 328; Fry v. State, 639 S.W.2d 463, 465 (Tex. Crim. App. [Panel Op.] 1982); State
v. Parson, 988 S.W.2d 264, 266 (Tex. App.—San Antonio 1998, no pet.). Thus, all of the
evidence which the officers obtained as a result of the detention should have been suppressed. 
      The trial court erred in its application of the law of search and seizure when it denied
Yeager’s motion to suppress. That error affected Yeager’s substantial rights.


 Tex. R. App.
P. 44.2(b); McCain v. State, 995 S.W.2d 229, 235 (Tex. App.—Houston [14 Dist.] 1999, pet.
ref’d, untimely filed). Therefore, we reverse its judgment and remand this cause with
instructions to grant Yeager’s motion to suppress in its entirety.
 
 
                                                                       BILL VANCE
                                                                       Justice

Before Chief Justice Davis
          Justice Vance, and
          Justice Gray
          (Dissenting Opinion by Justice Gray)
Reversed and remanded
Opinion delivered and filed June 21, 2000
Publish