IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-08-00049-CR

 

Melanie Denise McFatridge,

                                                                                    Appellant

 v.

 

The State of Texas,

                                                                                    Appellee

 

 

 



From the County Court

Navarro County, Texas

Trial Court No. 58988

 



O R D E R 



 








            In this Order, we address Melanie
Denise McFatridge’s appeal of the trial court’s determination that she is not
indigent for purposes of appeal.  We will affirm the court’s determination and reset
the appellate timetable.

Background

            McFatridge filed a sworn motion for a
free reporter’s record.  This motion was supported by an affidavit of indigency
which incorporated an exhibit in which McFatridge asserted that she has monthly
gross income of $550, and monthly expenses of $484.

            McFatridge stated in her affidavit, “I
do not have knowledge of any other source from which I can obtain funds to
obtain the services of counsel.”  She did not, however, identify any assets
that she owns or the extent to which such assets may be encumbered.  Her first
witness, Bill Smith, testified that they had executed a contract for deed in
June 1997 for a house located on Cemetery Road for which McFatridge was paying
$200 per month.  He maintained that he is the owner of this property and will
remain so until she satisfies the contract.  Smith also indicated that McFatridge
has been experiencing unspecified “financial problems” though he could not
elaborate on them, other than to say “she had a lot of trouble with child
support.”

            The next witness testified that
McFatridge was unable to have electric service connected at her house in her
own name, so the electric bill is in his name.[1] 
Although counsel asked whether this was “for credit reasons,” the witness
responded that he did not know.

            Following the practice employed in
civil appeals, the court reporter challenged McFatridge’s indigence claim by
filing a contest.  See Tex. R.
App. P. 20.1(e).  McFatridge objected when the State sought to introduce
the court reporter’s testimony[2] on
the basis that such testimony would violate the reporter’s professional
obligations to “be fair and impartial towards each participant.”  The trial
court implicitly overruled this objection by permitting the reporter to
testify.  Id. 33.1(a)(2)(A).

            The court reporter testified that
McFatridge had approached her during a trial recess to discuss preparation of
the reporter’s record for appeal.  The reporter told her that the cost of the
record would be about $3,000.  McFatridge then offered to give the reporter
$3,000 in antiques for preparation of the record.  The reporter declined the
offer.  During cross-examination, McFatridge’s counsel suggested that the
reporter was violating her duty of confidentiality by offering this testimony. 
The court sustained the State’s objection to this line of cross-examination.

            Next, the State offered in evidence
records from the tax appraisal district reflecting that McFatridge owns two
tracts of real property, including the one for which she allegedly executed the
contract for deed with Smith, shown by these records to be located on Rose Hill Lane.  According to the appraisal district records, the Rose Hill Lane property
has a market value of $35,270, and the other tract has a market value of
$6,670.[3]

            McFatridge argued that the records
regarding the Rose Hill Lane property are incorrect because Smith testified
that he still owns that property.  In response, the State referred to an
application for homestead exemption McFatridge filed with the appraisal
district in 2000 in which she stated that she owned this property.

            McFatridge also responded that she had
sold the second tract of property shown in the appraisal district records.  She
explained that she had executed a contract for deed with another family who had
stopped making their payments and were now in adverse possession of the
property.  The State countered by offering in evidence as State’s Exhibit No. 3
a “warranty deed” purportedly showing that McFatridge owned this other
property.  However, this deed was never admitted and is not included in the
record.

            McFatridge claimed that she had filed
an eviction proceeding against the occupants of this other property in justice
court but the justice of the peace dismissed the case less than two weeks after
it was filed because it was a dispute over title rather than possession.  The
court granted McFatridge a two-day continuance to gather documentary evidence
to support her claim.

            On the final day of the indigence
hearing, the State presented the testimony of an appraisal district employee
who confirmed that McFatridge was the owner of both pieces of property
according to the appraisal district’s records.  He conceded on
cross-examination that he had no knowledge of whether there were any liens
against the property for debts she owed.  He also conceded that Smith could
still be the title holder of the Rose Hill Lane property even though the
appraisal district records showed otherwise.

            McFatridge concluded by offering in
evidence (1) a 1993 warranty deed reflecting a conveyance of the Rose Hill Lane
property to Smith and his wife and (2) justice court records from August 2000
supporting her statements regarding the eviction proceeding.

            After hearing argument of counsel, the
court ruled that McFatridge is not indigent.  The court later prepared findings
of fact and conclusions of law to support its ruling.  In particular, the court
found: (1) based on McFatridge’s 2006 income tax return, her annual income
exceeds the federal poverty limit; and (2) she owns non-exempt assets worth
$9,670 ($3,000 in antiques and the second tract of property).  Thus, the court
concluded that McFatridge could employ these non-exempt assets to obtain
suitable appellate representation and to pay for the record.

Applicable Law

            There are two separate indigence
inquiries at issue: (1) whether McFatridge is indigent for the purpose of obtaining
a free appellate record; and (2) whether she is indigent for the purpose of
obtaining court-appointed counsel.  See Whitehead v. State, 130 S.W.3d 866,
876-78 (Tex. Crim. App. 2004).  Article 26.04 of the Code of Criminal Procedure
governs the appointment of counsel and provides a list of statutory factors to
be considered in determining whether a defendant is indigent.  See Tex. Code Crim. Proc. Ann. art. 26.04 (Vernon Supp. 2008).

            In determining whether a defendant is
indigent, the court or the courts’ designee may consider the defendant’s
income, source of income, assets, property owned, outstanding obligations,
necessary expenses, the number and ages of dependents, and spousal income that
is available to the defendant.  The court or the courts’ designee may not
consider whether the defendant has posted or is capable of posting bail, except
to the extent that it reflects the defendant’s financial circumstances as
measured by the considerations listed in this subsection.

 

Id.
art. 26.04(m).  These factors are relevant to both indigence inquiries.  Whitehead,
130 S.W.3d at 878.

            “The indigency determination is made
on a case-by-case basis as of the time the issue is raised and not as of some
prior or future time.”  Id. at 874 (quoting Gray v. Robinson, 744
S.W.2d 604, 607 (Tex. Crim. App. 1988) (orig. proceeding)).  A two-step process
applies to the indigence determination: “(1) the defendant must make a prima
facie showing of indigence, and (2) when the prima facie showing is
made, the burden shifts to the State to show that the defendant is not in fact
indigent.”  Id.

            We show some deference to a trial
court’s factual determinations regarding a defendant’s indigence, but a trial
court is not at liberty to disbelieve a defendant’s allegations concerning his own
financial status unless the court has “a reasonable, articulable basis for
doing so, either because there is conflicting evidence or because the evidence
submitted is in some manner suspect or determined by the court to be
inadequate.”  Id. at 876.

            As with other appellate proceedings,
this Court may not consider factual assertions which are outside the record.  Id. at 872.  Our review is limited to: (1) sworn pleadings and affidavits on file at
the time of the trial court’s indigence determination, and (2) sworn testimony
and exhibits admitted during the indigence hearing, if any.  Id. at
872-74.

 

 

 

Propriety of Court Reporter’s Testimony

            McFatridge raised two objections to
the court reporter’s testimony.  She argued that such testimony violated the
court reporter’s obligation to be fair and impartial and her duty of
confidentiality.

            The basis for McFatridge’s first objection
is found in Rule 10 of the Code of Professional Conduct for Certified Shorthand
Reporters and Court Reporting Firms which is entitled “Avoid Conflicts of
Interest.”  Code of Prof’l Conduct for
Cert. Shorthand Reporters & Ct. Reporting Firms 10 (West 2008).  The
rule provides in pertinent part, “A [court reporter] shall be fair and
impartial toward each participant in a legal proceeding.”  Id.

            The court did not abuse its discretion
by overruling this objection.  When as here a court reporter is privy to
relevant factual information regarding a party’s indigence claim, the reporter
may testify about that information.  This only makes sense in light of Rule of
Appellate Procedure 20.1(e) which specifically authorizes a court reporter to
challenge a civil litigant’s indigence claim.  See Tex. R. App. P. 20.1(e).  Rather, the
court reporter’s obligation to be “fair and impartial toward each participant”
is directed toward the reporter’s duties in reporting a particular hearing or
trial in an unbiased fashion.

            During cross-examination, McFatridge
suggested that the reporter was violating her duty of confidentiality by
testifying about McFatridge’s oral statements regarding the antiques.  See
Code of Prof’l Conduct for Cert.
Shorthand Reporters & Ct. Reporting Firms 8.[4] 
The court sustained the State’s objection to this line of cross-examination. 
The court stated that it did not believe that the duty of confidentiality
applies to the conversation at issue.  We agree.

            Accordingly, we cannot say that the
court abused its discretion by permitting the court reporter to testify.

Indigence Claim

            McFatridge made a prima facie
showing of indigence with her sworn motion and supporting affidavit.  However,
at the indigence hearing she did not testify although her attorney[5]
offered some documentary exhibits in evidence in an effort to refute the
State’s evidence.[6]

            The court based its finding regarding McFatridge’s
income on her 2006 federal income tax return in which she claimed gross
business income of $10,905 (and net profit of $5,990).  McFatridge offered no
evidence to explain how or why her income in 2008 is less than it was two years
earlier.

            The court found that she owns
non-exempt assets with a market value of $9,670.  See Tex. Code Crim. Proc. Ann. art.
26.04(m) (authorizing court to consider “property owned” by defendant); see
also Whitehead, 130 S.W.3d at 878.  She offered no evidence to refute the
court reporter’s testimony that she offered to pay for the record with $3,000
worth of antiques.  The court heard conflicting evidence regarding her
ownership of the property shown by appraisal district records to be worth
$6,670.  Although McFatridge offered documentary evidence supporting her claim
that others are occupying that property, the appraisal district records reflect
that the property was conveyed to McFatridge in 2002, two years after the
eviction proceedings were dismissed.

            The court’s findings are supported by
the evidence.  Accordingly, we cannot say that the court abused its discretion
by finding that McFatridge is not indigent.

Conclusion

            McFatridge should not be penalized for
exercising her right to appellate review of the court’s indigence
determination.  See Nelson v. State, 6 S.W.3d 722, 725 (Tex. App.—Waco 1999, order, no pet.), overruled on other grounds by Duncan v. State,
158 S.W.3d 606, 607 (Tex. App.—Waco 2005, order) (per curiam), appeal dism’d,
220 S.W.3d 131 (Tex. App.—Waco 2007, pet. ref’d).[7] 
Therefore, the clerk’s record and the reporter’s record are due within thirty
days after the date of this Order.  Id.  Within that time period,
McFatridge must also pay the clerk’s and reporter’s fees for preparation of these
records or make payment arrangements.  See Tex. R. App. P. 35.3(a)(2), (b)(3).  The appellant’s brief
will be due within thirty days after the record has been filed, and the State’s
brief will be due within thirty days after the appellant’s brief is filed.  Id. 38.6.

            It is so ordered.

PER CURIAM

Before Chief Justice
Gray,

Justice
Vance, and

Justice
Reyna

(Chief
Justice Gray dissenting with note)*

Order issued and filed
September 3, 2008

Publish

[CR25]

 

*           (“Chief
Justice Gray does not join the Court’s discussion of the indigence
determination and dissents from its conclusion related thereto.  He notes,
however, that ownership of property does not equate to the present ability to
pay or make arrangements to pay for a record or legal services.  A separate order
on these issues will not issue.”)

 









[1]
              The address on the bill is for
 Rose Hill Street, but the witness explained that the street is also known as Rose Hill Cemetery Road because there is a cemetery there.

 





[2]
              A different court reporter
made a record of the indigence hearing.

 





[3]
              The appraisal district records
also contain abbreviations for the types of conveyances by which title was
acquired for these properties.  The records indicated that the Rose Hill Lane property was conveyed by a “D-CS” in McFatridge’s favor on June 25, 1997 and
the other property was conveyed to her by a “D-GWD” dated August 22, 2002. 
There is no evidence in the record explaining these abbreviations.

 





[4]
              Rule 8 provides, “A [court
reporter] shall preserve the confidentiality and ensure the security of
information, oral or written, entrusted to [the reporter] by any of the parties
in a proceeding.”  Code of Prof’l
Conduct for Cert. Shorthand Reporters & Ct. Reporting Firms 8 (West
2008).

 





[5]
              McFatridge had court-appointed
counsel for trial, and it appears that the court appointed other counsel to
represent her on appeal.  However, her appointed appellate counsel was
permitted to withdraw after the court determined that McFatridge was not
indigent.  McFatridge currently represents herself.

 





[6]
              The court conducted the
indigence hearing over three days, apparently interspersed with hearings in
other cases.  From the reporter’s record, it is not even clear that McFatridge
attended each phase of the indigence hearing.  The record does reflect that she
was present on the second day, however.

 





[7]
              Duncan overruled Nelson
to the extent that it stood for the proposition that an indigence appeal like
McFatridge’s should be docketed under a separate cause number.  Duncan v. State, 158 S.W.3d 606, 607 (Tex. App.—Waco 2005, order) (per
curiam), appeal dism’d, 220 S.W.3d 131 (Tex. App.—Waco 2007, pet.
ref’d).








n>               Sustained.
 
      Defense:            And the Sixth Amendment –
 
      Court:               Instruct the jury they will disregard the last statement
of counsel for any purpose.

Foster then moved for a mistrial which was overruled by the trial court
      The State again contends that the argument was a reasonable deduction from the evidence.
But, when the trial court sustains an objection and grants a request for an instruction for the
jury to disregard but denies the motion for mistrial, the issue becomes whether the trial court
erred in denying the mistrial. Carlock, 8 S.W.3d at 723; Vollbaum v. State, 833 S.W.2d 652,
659 (Tex. App.—Waco 1992, pet. ref’d). The trial court’s decision can be error only if the
argument is extreme, manifestly improper, injects new and harmful facts into the case or
violates a mandatory statutory provision and was thus so inflammatory that its prejudicial
effect cannot be reasonably removed from the minds of the jury by an instruction to disregard. 
Id. See also Trent v. State, 925 S.W.2d 130, 133 (Tex. App.—Waco 1996, no pet.). If the
instruction cured any prejudicial effect caused by the improper argument, the reviewing court
should find that the trial court did not err. Faulkner v. State, 940 S.W.2d 308, 312 (Tex.
App.—Fort Worth 1997, pet. ref’d). If the instruction did not cure the prejudicial effect, error
results, and the reviewing court proceeds with a harm analysis. Carlock, 8 S.W.3d at 724. 
      This portion of the State’s argument was neither extreme, nor manifestly improper. It also
did not inject new and harmful facts into the case or violate a mandatory statute. Assuming,
without deciding, the argument was improper, we hold the instruction given by the trial court
cured the prejudicial effect, if any. See Id.; Vollbaum, 833 S.W.2d at 659. Foster’s fifth issue
is overruled.
Sufficiency of the Evidence
      In his sixth and seventh issues, Foster contends that the evidence was both legally and
factually insufficient to support the conviction of capital murder. He specifically contends in
each issue that the evidence was insufficient to prove he was a party to the robbery. This is the
area to which we will confine our review of the facts.
Facts
      Leatch and Foster met the night before the murder and planned to rob someone because
they were tired of not having any money. They did not plan to rob anyone in particular,
including the victim.
      The next day, Leatch left school approximately one hour after arriving and met Foster at
Cross’s house where they were going to buy marijuana. Leatch stated that they wanted to buy
drugs to get the safe opened. Cross kept the marijuana and money in the safe. Foster went
into Cross’s house alone. Leatch knocked on the door later, but Cross would not let him in
unless he was wearing a shirt. Foster loaned Leatch a tank top, and Leatch entered Cross’s
house. Cross then approached the couch in the living room and began to bend over to reach
under it. This did not alarm Leatch because he had purchased drugs from Cross before and
knew that she kept plastic baggies in which to place marijuana under the couch. As she was
reaching under the couch, Foster shot Cross in the head.
      Leatch rummaged through Cross’s house looking for something to take with him. He
grabbed a tray of marijuana. In the meantime, Foster was beating Tashita Bibles, an overnight
guest of Cross, with a crowbar or tire tool. Either Leatch or both Leatch and Foster picked up
the safe and pushed it out the window. They both tried to carry it with them, but it was too
heavy. They pushed it into some trees or bushes near the alley behind Cross’s house, and
Foster covered it with his Chicago White Sox T-shirt. This was a different shirt than the one
previously loaned to Leatch.
      Foster denied any intent to rob Cross. He admitted, however, that he and Leatch had
planned on robbing someone. He also stated he did not know when or how Leatch entered
Cross’s house. Foster admitted that he shot Cross, but testified that he thought she was
reaching under the couch for a gun. Foster denied being in the house when the safe was
pushed out the window. Rather, he claimed that he was in the alley. He also denied ever
touching the safe. He admitted to at least covering the safe with his T-shirt.
Legal Sufficiency
      When reviewing a claim of legal insufficiency of the evidence, we must determine, after
considering all the evidence in a light most favorable to the verdict, whether any rational trier
of fact could have found the essential elements of the crime beyond a reasonable doubt. 
Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979); Johnson
v. State, 967 S.W.2d 410, 412 (Tex. Crim. App. 1998). This review is the same for both
direct and circumstantial evidence cases. Green v. State, 840 S.W.2d 394, 401 (Tex. Crim.
App. 1992); see also Geesa v. State, 820 S.W.2d 154, 159 (Tex. Crim. App. 1991).
      For a murder to qualify as capital murder, the defendant’s intent to rob the victim must be
formed at or before the time of the murder. Tex. Pen. Code Ann. § 19.03(a)(2) (Vernon
1994); Alvarado v. State, 912 S.W.2d 199, 207 (Tex. Crim. App. 1995). The fact finder,
however, is free to look to the conduct of the accused and make reasonable inferences
therefrom. Hall v. State, 970 S.W.2d 137, 141 (Tex. App.—Amarillo 1998, pet. ref’d)(citing
Robertson v. State, 871 S.W.2d 701, 705 (Tex. Crim. App. 1993)). Foster contends that at
worst, a theft occurred after the murder of Cross. The ultimate question in this case is whether
any rational trier of fact would be justified in finding from the evidence as a whole, that Foster
intended to take Cross’s property before, or as, he murdered her. Nelson v. State, 848 S.W.2d
126, 131-132 (Tex. Crim. App. 1992). What elevates the occurrence of a theft to robbery is
the presence, at the time of, or prior to, the murder, of an intent to obtain or maintain control
of the victim’s property. Id. at 132. Therefore, if there is evidence from which the jury could
rationally conclude beyond a reasonable doubt that a defendant formed the intent to obtain or
maintain control of the victim’s property either before or during the commission of the murder,
then the State has proven that the murder occurred in the course of robbery even though the
element of appropriation occurred after the murder. Alvarado, 912 S.W.2d at 207; Nelson,
848 S.W.2d at 132.
      We are convinced that a rational trier of fact could find that Foster formed the intent to
obtain and maintain control of some of Cross’s property prior to or at the time he shot Cross. 
The evidence is legally sufficient, and Foster’s sixth issue is overruled.
Factual Sufficiency
      When conducting a review of the factual sufficiency of the evidence, we begin with the
assumption that the evidence is legally sufficient. Santellan v. State, 939 S.W.2d 155, 164
(Tex. Crim. App. 1997). We then apply the latest standard of review set out by the Court of
Criminal Appeals in Johnson v. State, No. 1915-98, 2000 WL 140257 (Tex. Crim. App.
2000). We ask “whether a neutral review of all the evidence, both for and against the finding,
demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the [the
fact finder’s] determination, or the proof of guilt, although adequate if taken alone, is greatly
outweighed by contrary proof.” Id. at *8; see also Clewis v. State, 922 S.W.2d 126 (Tex.
Crim. App. 1996); Stone v. State, 823 S.W.2d 377 (Tex. App.—Austin 1992, pet. ref’d); Cain
v. State, 958 S.W.2d 404 (Tex. Crim. App. 1997).
      After reviewing all the evidence, both for and against the verdict, the proof of guilt is not
so obviously weak as to undermine confidence in the jury’s verdict. Additionally, the proof of
guilt is not greatly outweighed by contrary proof. The evidence is factually sufficient to
support the conviction, and Foster’s seventh issue is overruled.
Conclusion
      Having overruled all of Foster’s issues on appeal, the judgment of the trial court is
affirmed.

                                                             TOM GRAY
                                                             Justice

Before Chief Justice Davis,
      Justice Vance, and
      Justice Gray
Affirmed
Opinion delivered and filed July 26, 2000
Publish