NO. 07-03-0074-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

JUNE 7, 2005

_____

THOMAS R. WIGHT, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 140TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2002-439034; HONORABLE JIM BOB DARNELL, JUDGE

_____

Before REAVIS and CAMPBELL, JJ.[1]

**MEMORANDUM OPINION**

Following a plea of not guilty, appellant Thomas R. Wight was convicted by a jury of burglary of a habitation with intent to commit assault, enhanced, and punishment was

_____

[1]Former Chief Justice Phil Johnson was on the panel that heard oral argument. He did not participate in the decision. Tex. R. App. P. 41.1(b).

assessed by the court at 25 years confinement. Presenting three points of error, appellant asserts the trial court erred in (1) refusing to include his requested instruction for the lesser included offense of criminal trespass where the State was granted the lesser included offense of assault from the original charge of burglary of a habitation with intent to commit aggravated assault; (2) allowing the State to include, over objection, a picture of the alleged victim's minor child when the child was not alleged to be a victim nor did the testimony ever indicate she knew of the occurrence of the alleged events, and admission of the picture was irrelevant and inflammatory; and (3) refusing to allow the jury to hear testimony from the defense expert who would have testified to appellant's intent based on his experience, training, and education evidenced by his certification in a field recognized and regulated by the same State of Texas as was prosecuting him. We affirm.

Appellant and the victim were involved in a relationship for a few years beginning in 1999, and after he moved to Arizona, the distance and other problems lead to a breakup. One morning in January 2002, appellant unexpectedly arrived at the victim's apartment and began knocking. When she looked through the peephole and realized it was him, she escorted her four-year-old daughter to a back bedroom to watch cartoons and shield her from any potential confrontation.

At first, she ignored appellant hoping he would think no one was home. The knocking became louder and stronger, and appellant also began making repeated telephone calls from his cell phone to her cordless telephone. Without opening the door,

2

she asked what he wanted. He told her to "open the door, dammit." As the door continued to shake, she became frightened and pressed her hands and weight against it. When she realized the door was not going to hold, she stepped back. The door gave way and, although still on its hinges, it could no longer be secured.

The victim was holding a cordless phone in her hand and attempting to call 911 when appellant entered. He took the phone away and struck her on her left ear with it before tossing it away. Appellant wanted to know whether she was involved with anyone and why she was avoiding him. Out of concern for her young daughter, she demanded he be quiet and agreed to talk rather than risk aggravating him. Worried about his unpredictable state of mind, she cooked him breakfast. He gave her a lemon cream cake and offered to take crackers to her daughter, who was still in the back bedroom. The victim accompanied him to the bedroom, but the girl was preoccupied watching cartoons and did not pay much attention.

After appellant ate, he complimented the victim in a suggestive tone and placed his hand on her thigh. She subtly rejected his advances and went into the kitchen to wash dishes. He then asked her if she still had the gun he had purchased for her and proceeded toward the bedroom to look for it before she stopped him because she didn't want her daughter being disturbed.

To persuade him to leave, she explained that she would need to call maintenance about the damaged door and it would be best if he were not in the apartment when they

3

arrived. She escorted him to his car and after she was sure he drove away, she returned to the apartment. After checking on her daughter, she telephoned her mother and told her about the incident and asked her to speak with appellant's mother to suggest to appellant that he leave her alone. Her mother insisted she call the police and report the situation.

After making a statement to Officer Kevin Russell, who responded to the domestic disturbance call, the victim and her daughter gathered a few belongings and went to a motel. Appellant's whereabouts at that time were still unknown.

After charges were filed, appellant's mother wrote a letter urging the victim to drop the charges or she would hand over harmful information she had on the victim to be used against her in a custody case. The victim agreed to sign a non-prosecution affidavit in exchange for the harmful information and an assurance that appellant would no longer harass her or her family members.

The victim was unaware that the State could pursue the case despite the non-prosecution affidavit. Appellant was charged in a three-count indictment with burglary of a habitation with intent to commit aggravated assault, burglary of a habitation with intent to commit assault, and aggravated assault. The victim was subpoenaed to testify. Appellant was convicted of burglary of a habitation with intent to commit assault.

By his first point, appellant contends the trial court erred in refusing to include his requested instruction for the lesser included offense of criminal trespass where the State

4

was granted the lesser included offense of assault from the original charge of burglary of a habitation with intent to commit aggravated assault. We disagree.

The decision whether to include an instruction on a lesser included offense requires a two-step analysis. Rousseau v. State, 855 S.W.2d 666, 673 (Tex.Cr.App. 1993), *cert. denied*, 510 U.S. 919, 114 S.Ct. 313, 126 L.Ed.2d 260 (1993). First, the lesser included offense must be included within the proof necessary to establish the offense charged, and second, there must be some evidence that would permit a rational jury to find that if the defendant is guilty, he is guilty only of the lesser offense. *Id. See also* Tex. Code Crim. Proc. Ann. art. 37.09 (Vernon 1981).

Burglary of a habitation occurs when a person, without the effective consent of the owner, enters a habitation with intent to commit felony, theft, or assault. Tex. Pen. Code Ann. § 30.02(a)(1) (Vernon 2003). A person commits criminal trespass if he enters or remains on or in property of another without effective consent and had notice that the entry was forbidden or received notice to depart but failed to do so. § 30.05(a). Criminal trespass is a lesser included offense of burglary. *See* Day v. State, 532 S.W.2d 302, 306 (Tex.Cr.App. 1975); *see also* Wyble v. State, 764 S.W.2d 927, 929 (Tex.App.–Amarillo 1989, pet. ref'd). Thus, the first prong of *Rousseau* is satisfied.

In order to meet the second prong of the *Rosseau* analysis, there must be some evidence in the record that appellant is only guilty of criminal trespass. Burglary requires intent, and intent to commit an act may be inferred from the defendant's conduct and

5

surrounding circumstances. McGee v. State, 923 S.W.2d 605, 608 (Tex.App.–Houston [1st Dist.] 1995, no pet.); *see also* Dues v. State, 634 S.W.2d 304, 305 (Tex.Cr.App. [Panel Op.] 1982). A person commits an assault when he intentionally, knowingly, or recklessly causes bodily injury to another. Tex. Pen. Code Ann. § 22.01(a)(1) (Vernon Supp. 2004-05).

Intent to commit a felony, theft, or an assault must exist at the moment of entry or there is no offense under section 30.02(a)(1). DeVaughn v. State, 749 S.W.2d 62, 65 (Tex.Cr.App. 1988). Furthermore, once unlawful entry is made, the crime is complete, regardless of whether the intended theft, felony, or assault is actually completed. Ford v. State, 632 S.W.2d 151, 153 (Tex.Cr.App. [Panel Op.] 1982). Finally, intent is a fact issue which is usually established by circumstantial evidence and may be inferred from acts, words, and conduct of the accused. *See* Moore v. State, 969 S.W.2d 4, 10 (Tex.Cr.App. 1998) 9 (en banc); *see also Dues*, 634 S.W.2d at 305.

The State established that appellant entered the victim's apartment by force and that substantial damage was done to the door, the frame, and the knob. The victim testified that appellant used an expletive when demanding she open the door. She also testified she was frightened for herself and her daughter and did not want him there. She explained that she acted cordially only to avoid further confrontation. According to her testimony, her left ear was tender, red, and swollen from being struck by appellant with the cordless phone.

The responding officer also testified that he observed the injury to the victim's left ear. In his opinion, the victim was nervous and scared, yet she downplayed the incident to avoid upsetting her daughter. She explained the officer's presence in the apartment as a "nice man" who was there to talk.

Although no fingerprints or photographs, except for one of the victim's daughter, were introduced into evidence to show property damage or the victim's injuries, there is likewise no evidence to indicate the victim fabricated the story, which was the defense's theory. The only defense witness was a former neighbor of appellant's who testified that at one time, although she could not pinpoint a date, appellant had a key to the victim's apartment and the victim had a key to appellant's place. Based on a motion in limine, she testified, outside the jury's presence, that she believed the victim did not have a good reputation for truth and veracity. However, the trial court denied any questioning on the victim's reputation because the witness could not base her opinion on anything other than personal knowledge.

Based on the evidence and appellant's conduct, there is nothing to suggest he was only guilty of the lesser included offense of criminal trespass. Thus, he did not satisfy the second prong of *Rosseau*, and the trial court did not err in refusing to instruct the jury on the lesser included offense. Point of error one is overruled.

By his second contention, appellant urges error by the trial court in admitting, over objection, a picture of the alleged victim's minor child when the child was not alleged to be

7

a victim nor did the testimony ever indicate she knew of the occurrence of the alleged events, and admission of the picture was irrelevant and inflammatory. We disagree.

The admission of photographs into evidence is within the discretion of the trial court and will not be disturbed absent an abuse of discretion. Wyatt v. State, 23 S.W.3d 18, 29 (Tex.Cr.App. 2000). Generally, a photograph is admissible if verbal testimony regarding it is also admissible. Emery v. State, 881 S.W.2d 702, 710 (Tex.Cr.App. 1994), *cert. denied*, 513 U.S. 1192, 115 S.Ct. 1257, 131 L.Ed.2d 137 (1995). A non-exhaustive list of factors to consider in determining whether the probative value of photographs is outweighed by the danger of unfair prejudice include the number of exhibits offered, their gruesomeness, detail, size, whether they are black and white or color, whether they are close-up, whether the body is naked or clothed, and the availability of other means of proof and circumstances unique to each case. *See* Williams v. State, 958 S.W.2d 186, 173 (Tex.Cr.App. 1997) (en banc).

When the victim was testifying, the State offered a small studio quality photograph of her young daughter to which the defense objected as follows, "I can't see any reason, other than to prejudice the jury, for that to be introduced. I see no relevance."[2] The State responded that the relevance was the victim's daughter's presence during the incident. The trial court overruled the objection.

---

[2]Although not artfully presented, the specific grounds of the objection are apparent from the context to satisfy the prerequisites for preserving a complaint for appellate review under Rule 33.1(a) of the Texas Rules of Appellate Procedure.

Evidence is relevant if it has the tendency to make the action more probable or less probable than it would be without the evidence. Tex. R. Evid. 401. Relevant evidence is admissible unless the probative value is substantially outweighed by the danger of unfair prejudice to the defendant. Tex. R. Evid. 403; Montgomery v. State, 810 S.W.2d 372, 389-90 (Tex.Cr.App. 1990) (on reh'g). In overruling a Rule 403 objection, the trial court is assumed to have applied a balancing test and determined the evidence was admissible. Hinojosa v. State, 995 S.W.2d 955, 957 (Tex.App.–Houston [14th Dist.] 1999, no pet.). Rule 403 does not require that the balancing test be performed on the record. *Id.*

The victim testified numerous times that her conduct toward appellant was motivated by the desire to protect her young daughter from confrontation. Throughout her testimony, her daughter was the primary consideration in avoiding agitating appellant while he was in the apartment. We conclude that relevance of the victim's daughter's photograph was demonstrated.

In reviewing the trial court's Rule 403 analysis, we are convinced there was no unfair prejudice to appellant by introduction of the photograph. It was a studio quality photograph, small in size, of a fully clothed child. The trial court did not abuse its discretion in admitting the photograph. Point of error two is overruled.

By his third and final point, appellant contends the trial court erred in refusing to allow the jury to hear testimony from Bill Tuey, an expert in the field of polygraph examinations who, based on his experience, training, and education evidenced by his

certification in a field recognized and regulated by the same State of Texas as was prosecuting him, would have testified to appellant's intent. We disagree.

The existence and results of a polygraph examination are inadmissible for all purposes. Tennard v. State, 802 S.W.2d 678, 683 (Tex.Cr.App. 1990) (en banc), *cert. denied*, 501 U.S. 1259, 111 S.Ct. 2914, 115 L.Ed.2d 1077 (1991), citing Nethery v. State, 692 S.W.2d 686, 700 (Tex.Cr.App. 1985) (en banc), *cert. denied*, 474 U.S. 1110, 106 S.Ct. 897, 88 L.Ed.2d 931 (1986). Adhering to the highest criminal court's decision, we have held that a trial court does not err in excluding polygraph test results. *See* Hall v. State, 970 S.W.2d 137, 142 (Tex.App.–Amarillo 1998, pet. ref'd).

Appellant acknowledges our holding in *Hall*, but argues that the scientifically based polygraph results would have been admissible under the confrontation clauses of the United States and Texas Constitutions. He further argues that justice would be done by allowing the exonerating evidence which, in the hands of a trained examiner would, "shed the light of truth or a [sic] least break the darkness of a complaining witness's deception."

During *voir dire* examination, Tuey testified that appellant responded truthfully to questions regarding the allegations against him during a polygraph examination that would have exonerated him of the charges. Appellant sought to have the results introduced into evidence. The trial court, following precedent, denied the request. As an intermediate court of appeals, we are also obligated to follow precedent declared by a higher court until such time as it modifies the rule that polygraph results are inadmissible for all purposes.

*Id. See also* Wilson v. State, 108 S.W.3d 328, 332 (Tex.App.–Fort Worth 2003, pet. ref'd). We conclude the trial court did not abuse its discretion in refusing to allow Tuey to testify to the results of appellant's polygraph examination. Point three is overruled.

Accordingly, the judgment of the trial court is affirmed.

Don H. Reavis
Justice

Do not publish.