NO. 07-10-00243-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

JUNE 22, 2012

DEWAYNE PAUL HINDMAN, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

FROM THE 251ST DISTRICT COURT OF POTTER COUNTY;

NO. 55,551-C; HONORABLE ANA ESTEVEZ, JUDGE

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

**MEMORANDUM OPINION**

A jury convicted appellant Dwayne Paul Hindman of capital murder and the trial court assessed the mandatory sentence of life in prison without the possibility of parole.[1] On appeal, appellant argues insufficient evidence supported his conviction and because of his continuing indigence the trial court erred by taxing as court costs his court-appointed attorney's fees, investigator fees, and witness fees. The State agrees

---

[1] Tex. Penal Code Ann. § 19.03(a)(2) (West Supp. 2011) (capital murder); § 12.31(a)(2) (West 2011) (punishment of life without parole when State does not seek death penalty).

the judgment should be modified to delete these fees as costs assessed against appellant. We will modify the judgment accordingly and affirm it as modified.

## Factual and Procedural Background

Appellant was indicted for the April 1, 2007, capital murder of Huong Thi Rowlett. The indictment alleged he killed Rowlett in the course of committing or attempting to commit robbery. At trial in June 2010, the court's charge gave the jury the options of finding appellant not guilty, guilty of capital murder or guilty of the lesser offense of murder. As noted, the jury found him guilty of the more serious offense. On appeal, appellant does not challenge the sufficiency of the evidence he intentionally killed Rowlett. He confessed to killing her. He challenges only the evidence supporting the finding he did so in the course of committing robbery.

Rowlett, who immigrated from Vietnam in 1975, sometimes worked at an Amarillo convenience store owned by one of her daughters. During the late afternoon of April 1, 2007, Rowlett was the clerk at the convenience store. Witness McCray, a regular customer, and his friend Sain testified they stopped at the convenience store that afternoon. Outside the store, McCray heard a noise he described as "like a help scream. Trouble. Getting hurt." Opening the door, he noted the scream grew louder. Behind the store's counter McCray saw someone "maybe robbing the place." Both saw the man standing over a woman. McCray made eye contact with the man before McCray and Sain fled the store.

Once outside, McCray called police. McCray and Sain then drove around the block. According to appellant, "possibly 30 to 40 seconds" after leaving the store,

2

McCray saw a man running between streets about a block from the store. Appellant concedes he was the man.

McCray and Sain stopped again at the store, and McCray briefly entered. He checked on the woman, and found her "completely quiet." A police officer shortly arrived, and McCray told the officer the woman in the store was dead. Inside the store, in the area around the cash register, the officer found Rowlett on the floor, bleeding. She was not breathing and had no pulse. The officer began applying CPR, and noted Rowlett had several puncture wounds.

The officer found the cash register drawer open and empty of currency. He described the counter area of the store as a "mess," with items knocked over and cigarettes on the floor.

A second officer also noted Rowlett suffered several wounds to the chest, abdomen and arms. She lay in a large pool of blood. Blood was splattered on the counter and a wall. On the store's counter police found a styrofoam cup. Subsequent analysis showed thirteen of eighteen latent fingerprints on the cup matched appellant's.

Rowlett was pronounced dead at the hospital. The forensic pathologist testified to his opinion the cause of her death was a stab wound to the chest by a knife or knife-like implement.

Trial testimony indicated two to three hundred dollars was missing from the cash register. The store owner explained it was store procedure when the cash register was full to place extra cash in paper bags under the counter. Sometimes Rowlett placed

3

extra cash in her pockets. According to the owner, her mother usually used a key to open the cash register. The register could also be opened by pushing a button. Although the register was empty of currency after Rowlett's murder, a sack containing cash remained under the counter. Police eventually found over $1,600 hidden about the store, some $350 of it in Rowlett's pockets.

Other testimony showed that late in the afternoon of April 1, when an acquaintance of appellant's gave him a ride, appellant gave the acquaintance two packs of cigarettes for his assistance.

Tanya Ballin, with whom appellant lived during several months before Rowlett's murder, testified appellant held two jobs during those months, a position with a restaurant that lasted "for a while," and a carpet-laying job that "wasn't very long."

Although appellant had moved out of Ballin's residence on March 27, 2007, he spent the night of March 31 with Ballin. She testified they stayed up late, talking, to see if they could "work things out." The next day, April 1, around noon she drove appellant to a pizza restaurant where he had a job interview.

Appellant contacted Ballin about 7:00 p.m. with a borrowed cell phone, asking her to do his laundry. The following day, April 2, Ballin and appellant went to a Wal-Mart store where he gave her $30 to buy a paint-ball gun for him. He spent the majority of that week with Ballin.

After identifying appellant's fingerprints on the styrofoam cup found on the store counter, police began looking for appellant. On April 9, Ballin and appellant were in her

4

car when it was stopped for a traffic violation. Ballin and appellant were separated and both went to the police station for questioning.

During the questioning, Ballin was allowed to speak with appellant. Ballin recalled asking him if he committed the crime. She testified his response was "he didn't go in there for that," but to buy a Coke. She continued, "he remembers [Rowlett] yelling or something. He just snapped and then he didn't remember."[2] According to Ballin, appellant apologized saying "he just wanted to make me happy."

After refreshing her memory with a summary of her conversation with appellant, Ballin added, "I had asked him what had happened and he said she was yelling--the lady was yelling at him. I asked him why. He said he didn't know. He had got a soda and drank half of it and filled it up again. And that he just lost it. And he said he should have been on his meds. And he said he was crazy. If he was on his meds, he would never have left me. I had asked him about the money that he had put in my purse, if this was from there and he said yes." Ballin noticed the money in her purse, about $50, and believed it was from appellant but said nothing to him about it. When Ballin asked appellant why he did not tell her of committing the crime he responded, "He didn't have a choice." In later conversations with Ballin, appellant denied committing the crime.

Appellant's recorded statement to police was played before the jury. He confessed to killing Rowlett, with the explanation, "I lost it." He admitted taking three packs of cigarettes and some money to help his girlfriend.

---

[2] Rowlett had a hearing impairment for which she wore a hearing aid. Testimony indicated that as a result of this condition, she spoke loudly, in a tone others sometimes considered angry.

Based on indigence, counsel for appellant was appointed. The court's written judgment signed June 24, 2010, taxed appellant with attorney's fees, the fee of an investigator, and witness fees. Appellant timely noticed this appeal. On July 12, 2010, the trial court signed an order, pursuant to Government Code § 501.014, to withdraw "court costs, fees and/or fines and/or restitution" from appellant's inmate account.

Analysis

In his first issue appellant argues the evidence was insufficient to prove he formed the intent to obtain or maintain control of Rowlett's property prior to or during her murder.

In reviewing the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the court's judgment to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Brooks v. State,* 323 S.W.3d 893 (Tex.Crim.App. 2010) (citing *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)); *Clayton v. State,* 235 S.W.3d 772, 778 (Tex.Crim.App. 2007). This standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789; *Clayton,* 235 S.W.3d at 778. The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Brown v. State,* 270 S.W.3d 564, 568 (Tex.Crim.App. 2008). Thus, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the fact finder. *Dewberry v. State,* 4

6

S.W.3d 735, 740 (Tex.Crim.App. 1999). Instead, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State,* 214 S.W.3d 9, 16-17 (Tex.Crim.App. 2007). We must presume that the fact finder resolved any conflicting inferences in favor of the prosecution and defer to that resolution. *Jackson,* 443 U.S. at 326; *Clayton,* 235 S.W.3d at 778.

A person commits the offense of capital murder if he "commits murder as defined under Section 19.02(b)(1) and the person intentionally commits the murder in the course of committing . . . robbery[.]" Tex. Penal Code Ann. § 19.03(a)(2) (West Supp. 2011). A person commits murder under section 19.02(b)(1) when the person "intentionally or knowingly causes the death of an individual." Tex. Penal Code Ann. § 19.02(b)(1) (West 2011). A person commits robbery if, in the course of committing theft, and with intent to obtain or maintain control of the property, he intentionally, knowingly, or recklessly causes bodily injury to another. Tex. Penal Code Ann. § 29.02(a)(1) (West 2011). A person commits theft if he unlawfully appropriates property with intent to deprive the owner of property. Tex. Penal Code Ann. § 31.03(a) (West Supp. 2011).

For the State to prove murder committed in the course of robbery under § 19.03(a)(2) it must "prove a nexus between the murder and the theft, i.e. that the murder occurred in order to facilitate the taking of the property." *Moody v. State,* 827 S.W.2d 875, 892 (Tex.Crim.App. 1992 (citing *Ibanez v. State,* 749 S.W.2d 804, 807 (Tex.Crim.App. 1986)). Hence, the intent to rob must be formed before or at the time of the murder. *Alvarado v. State,* 912 S.W.2d 199, 207 (Tex.Crim.App. 1995); *Hall v.*

7

*State,* 970 S.W.2d 137, 140-41 (Tex.App.--Amarillo 1998, pet. refused). Evidence of a robbery committed as an afterthought and unrelated to the murder is insufficient evidence of capital murder. *Alvarado,* 912 S.W.2d at 207. The jury is permitted to infer the necessary intent from the conduct of the defendant. *Id.*

Borrowing the definition of a similar phrase contained in the robbery statute,[3] the Court of Criminal Appeals has held that a murder is committed "in the course of committing" an offense listed in § 19.03(a)(2) when it is committed in an attempt to commit, during the commission, or in the immediate flight after the attempt or commission of the offense. *McGee v. State,* 774 S.W.2d 229, 234 (Tex.Crim.App. 1989) (citing *Riles v. State*, 595 S.W.2d 858, 862 (Tex.Crim.App. 1980)). The Court of Criminal Appeals further noted in *McGee* that the Court "has held numerous times that this aggravating element is sufficiently proven if the State proves the robbery occurred immediately after the commission of the murder." *McGee,* 774 S.W.2d at 234 (citations omitted). Thus, a robbery occurring immediately after a murder will support an inference that the murder was committed in the course of committing the robbery. *See Cooper v. State,* 67 S.W.3d 221, 224 (Tex.Crim.App. 2002) (robbery case following *McGee,* 774 S.W.2d at 234). *See Ibanez,* 749 S.W.2d at 807 (nexus requirement for capital murder involving murder in course of robbery same as nexus requirement in robbery offense between assault and theft). Even in the absence of any other evidence of a nexus between murder and robbery, the "natural inference allowed by *McGee"* will support a conviction. *See Cooper,* 67 S.W.3d at 224. The inference is not overcome by the accused's evidence of an alternative motive if such evidence could rationally be

---

[3] See Tex. Penal Code Ann. § 29.01(1) (West 2011).

disregarded by the jury. *Id.  See also Cutsinger v. State,* 2007 Tex. App. Lexis 9854, at *6 (Tex.App.--Houston [14th Dist.] Dec. 20, 2007, no pet.) (mem. op.) (not designated for publication) (explaining, "The general rule is that a theft immediately following an assault supports an inference that the assault was intended to facilitate the theft, and evidence showing an alternative motive that the jury could rationally disregard will not negate this inference" (citing *Cooper,* 67 S.W.3d at 224)).

Even in *Nelson v. State*, 848 S.W.2d 126 (Tex.Crim.App. 1992), the opinion clarified in *Cooper*, 67 S.W.3d at 224, the court found the evidence sufficient to establish the required nexus between the murder and the taking of the victim's property. It did so by pointing in part to the defendant's financial need as motivation for the crime. 848 S.W.2d at 132.  The defendant asserted another motivation for his killing of the victim, rage because the victim looked at him "in a lustful way," but the court said the jury was not required to find the defendant's theory reasonable, nor was it required to believe he was motivated to kill only for that reason. *Id; see Cooper*, 67 S.W.3d at 223-24 (discussing *Nelson*).

The same is true here.  Appellant confessed to stabbing Rowlett to death.  He killed her behind the counter of a convenience store.  He was seen running a block away very shortly, "possibly 30 to 40 seconds," after witnesses saw him over Rowlett behind the counter.  Appellant took with him packages of cigarettes and cash from the store's register.  On these facts, the jury could apply the "natural inference" that appellant killed the convenience store clerk to facilitate the taking of the cash and cigarettes.  *Cooper*, 67 S.W.3d at 224.  Even beyond the permitted inference, the jury

9

was free to consider the evidence of appellant's financial straits and desire to mend his relationship with Ballin as providing a motive for the robbery and murder. *See Clayton v. State,* 235 S.W.3d 772, 781 (Tex.Crim.App. 2007); *Guevara v. State,* 152 S.W.3d 45, 50 (Tex.Crim.App. 2004) (both noting motive as a circumstance indicating guilt). Appellant depended on others for his basic needs. He had a minimal employment history and his April 1 interview apparently did not result in employment. The night before Rowlett's murder appellant and Ballin stayed up late trying to "work things out." The day after Rowlett's murder, appellant had money to buy a paint-ball gun and he put money taken from the convenience store in Ballin's purse. After confessing Rowlett's murder to police, appellant told Ballin he "just wanted to make [her] happy."

As judge of the weight and credibility of the evidence, the jury was equally free to disbelieve appellant's explanation that he killed Rowlett only because he "snapped" when she yelled at him. *Nelson,* 848 S.W.2d at 132; *see Hughes v. State,* 897 S.W.2d 285, 289 (Tex.Crim.App. 1994) (jury is free to accept or reject any or all of a witness's testimony). Finding the evidence sufficient to support appellant's conviction, we overrule his first issue.

By his second, third, and fourth issues, appellant respectively challenges the trial court's assessment of court-appointed attorney's fees, investigator fees, and witness fees as court costs. The State concedes that the record does not contain sufficient evidence of appellant's ability to pay court-appointed attorney's fees and investigator fees. It adds that under case law the witness fees should not have been taxed against appellant. Appellant also asks that we modify the withdrawal order to delete the

10

challenged fees. While the State agrees the judgment should be modified to delete taxation of the noted fees, it argues modification of the withdrawal order is not a matter for appellant's direct appeal of the criminal case.

The judgment, among other things, orders that appellant pay "all fines, court costs, and restitution." Elsewhere it recites, "Court Costs: $ see attached." Immediately following the judgment in the clerk's record is a bill of costs issued June 25, 2010. Pertinent to this discussion, it lists "Attorney Fees (court appointed) 3322.10"; "Investigator fee 1290.15"; and Witness Fee 255.00." A supplemental clerk's record contains a bill of costs issued June 2, 2011, certifying costs as of June 24, 2010. This bill of costs in part provides "Attorney Fees (court appointed) 23013.95"; "Investigator Fee 5690.15"; and Witness Fee 255.00." The record also contains a July 12, 2010, order to withdraw funds. In part, the order states appellant was "assessed court costs, fees and/or fines and/or restitution . . . in the amount of $5,258.83[.] The Court finds that [appellant] is unable to pay the court costs, fees and/or fines and/or restitution on this date and that the funds should be withdrawn from the offender's Inmate Trust Account."

Appellant received court-appointed trial counsel because of indigence. On appellant's motion, additional counsel was appointed. *See* Tex. Code Crim. Proc. Ann. art. 26.052(e) (West Supp. 2011). The trial court also authorized appellant to hire an investigator and ordered payment of the investigator. After trial, appellate counsel was appointed based on appellant's indigence. The record indicates the State intended to call as a trial witness a former area medical examiner now residing in California. A

11

county check in the amount of $105 was issued to the prospective witness but he did not testify at appellant's trial. Otherwise, the record gives no indication of the source of the witness fee included in the bill of costs.

A trial court has authority to order reimbursement of the fees of court-appointed counsel and investigative costs if the court determines that a defendant has financial resources enabling him to offset, in part or in whole, the costs of the legal services provided. Tex. Code Crim. Proc. Ann. art. 26.05(g) (West Supp. 2011); *Mayer v. State,* 274 S.W.3d 898, 901 (Tex.App.--Amarillo 2008), *aff'd,* 309 S.W.3d 552 (Tex.Crim.App. 2010); *Perez v. State,* No. 07-10-0147-CR, 2011 Tex. App. Lexis 5724, at *18 (Tex.App.--Amarillo July 26, 2011, pet. dismissed) (mem. op.) (not designated for publication) (investigative costs). But "[a] defendant who is determined by the court to be indigent is presumed to remain indigent for the remainder of the proceedings in the case unless a material change in the defendant's financial circumstances occurs." Tex. Code Crim. Proc. Ann. art. 26.04(p) (West Supp. 2011). "[T]he defendant's financial resources and ability to pay are explicit critical elements in the trial court's determination of the propriety of ordering reimbursement of costs and fees." *Mayer,* 309 S.W.3d at 556. Accordingly, the record must supply a factual basis supporting a determination the defendant is capable of repaying the attorney's fees and investigative costs levied. *Barrera v. State,* 291 S.W.3d 515, 518 (Tex.App.--Amarillo 2009, no pet.) (per curiam); *Perez,* 2011 Tex. App. Lexis 5724, at *20-21.

Here, the record does not show the trial court reconsidered its determination of indigency, the occurrence of a material change in appellant's financial circumstances, or

his ability to offset the cost of legal services provided. Tex. Code Crim. Proc. Ann. art. 26.04(p) and art. 26.05(g) (West Supp. 2011). Indeed, after imposition of sentence the trial court appointed appellate counsel for appellant and ordered a free record based on appellant's indigence. We agree with appellant, and the State concedes, there is no evidence appellant is able to repay attorney's fees and investigative fees expended on his behalf in the underlying case.

In *Sikalasinh v. State*, we held no statutory authorization exists for assessing non-resident witness fees as costs of court in criminal cases. *See Sikalasinh v. State,* 321 S.W.3d 792, 798 (Tex.App.--Amarillo 2010, no pet.) (holding Code of Criminal Procedure article 102.002 does not authorize assessment of witness fees paid pursuant to article 35.27 as costs of court). It was therefore error to tax witness fees against appellant. *See Watson v. State,* No. 07-10-0044-CR, 2011 Tex App. Lexis 3811, at *10-11 (Tex.App.--Amarillo May 19, 2011, no pet.) (mem. op.) (not designated for publication) (following *Sikalasinh* and so holding). We sustain appellant's second, third, and fourth issues to the extent we modify the judgment to delete taxation of the challenged fees as costs of court.

Because we will modify the judgment to specify that the term "court costs" does not include court-appointed attorney's fees, investigator fees, and witness fees we must also modify the withdrawal order. *See Reyes v. State,* 325 S.W.3d 865, 868 (Tex.App.--Amarillo 2010, no pet.) (modifying judgment to delete certain attorney's fees and correspondingly modifying withdrawal order). The July 12, 2010 withdrawal order states that appellant was assessed "court costs, fees and/or fines and/or restitution" in the

amount of $5,258.83.  This sum, according to the June 25, 2012 bill of costs, is the "fine and costs" due from appellant.  It consists of court-appointed attorney's fees of $3,322.10, investigator's fees of $1,290.15, and witness fees of $255.  These three fee categories collectively total $4867.25.  We modify the withdrawal order by deducting $4,867.25, from the total of $5,258.83, leaving a balance due of $391.58.

## Conclusion

We modify the judgment of the trial court as follows.  At page 2, beneath the heading "Furthermore, the following special findings or orders apply:" there is added, "As used in this judgment, the term 'court costs' does not include court-appointed attorney's fees, investigator fees, and witness fees."  We modify the July 12, 2010 withdrawal order so it provides that the amount of "court costs, fees and/or fines and/or restitution" assessed against appellant is $391.58.

As so modified, we affirm the judgment of the trial court.  Tex. R. App. P. 43.2(b).


James T. Campbell
Justice


Do not publish.