COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                       NO.
 2-08-270-CR

 

 

NANCY CAROL KESSLER                                                      APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM
COUNTY CRIMINAL COURT NO. 3 OF TARRANT COUNTY

 

                                              ------------

 

                   MEMORANDUM OPINION[1] ON REHEARING

 

                                              ------------

I. Introduction

After
reviewing Appellant=s motion for rehearing, we deny the
motion.  We withdraw our January 14, 2010
opinion and judgment and substitute the following.








Appellant
Nancy Carol Kessler appeals her conviction for driving while intoxicated
(DWI).  In two points, Appellant contends
the trial court erred by denying (1) her motion to suppress evidence acquired
because of a warrantless stop and (2) a jury instruction to disregard any
evidence that the jury believed was illegally obtained.  We will affirm.

II.  Factual and Procedural Background








While
responding to an unrelated call[2]
shortly after 2:00 a.m. on December 29, 2007, Officer Caleb Goodman of the
Grapevine Police Department brought his marked patrol car to a stop directly
behind Appellant=s vehicle at a red light on Main
Street at the Northwest Highway intersection. After the traffic light turned
green, Appellant=s vehicle accelerated from a
stop, stayed to the right through the intersection, and made an abrupt, evasive
maneuver to the left to avoid hitting the curb at the northeast corner of the
intersection.  Officer Goodman activated
his in-car video camera,[3]
initially believing that the driver was (1) not paying attention, (2) suffering
from a medical condition, or (3) intoxicated. 
Shortly after traveling through the intersection, Appellant=s
vehicle moved halfway into a designated left-turn lane but continued traveling
straight on North Main Street. 

When
Officer Goodman activated his overhead lights, Appellant pulled over into a
nearby parking lot.  Based on Appellant=s
driving behavior and Officer Goodman=s
observations after making the stop, Goodman placed Appellant under arrest for
DWI.[4]  

In a
pretrial motion, Appellant moved to suppress all evidence from the traffic
stop.  The trial court held a hearing on
Appellant=s motion on July 21, 2008.  Officer Goodman testified at the hearing that
based on his training and experience, he thought it reasonable to believe that
Appellant might be intoxicated based on (1) the time of day, (2) the numerous
locations selling alcoholic beverages that close at 2:00 a.m. in that area, (3)
the vehicle=s abrupt move to the left to
narrowly miss a curb, and (4) then not driving in a single lane.  Officer Goodman further testified that he did
not believe Appellant=s driving behavior constituted a
traffic violation.[5]  








On
cross-examination, Appellant=s counsel
attempted to impeach Officer Goodman with his testimony during Appellant=s
Administrative License Revocation (ALR) hearing in May 2008, in which the
following exchange had occurred:

Q: AWas there any other
traffic violation for which you stopped her?@        

 

A: ANo, sir.@  That was my response [at the ALR hearing].

 

Q: And then after that?

 

. . . .         

 

A: AJust failure to drive in a single lane.  Yes.@

 

Q: All right.  Would you agree
that was your sworn testimony back in May of this year?

 

. . . .

 

A: Yes, sir.

 

Q: Involving the same stop?

 

A: Yes, sir.

 

. . . .

 

Q: At no time during the hearing of the ALR did you ever suggest, let
alone mention, that you believed you had reasonable suspicion to stop that
vehicle because it might be being driven by an intoxicated person, correct?

 








A: I haven=t read the transcript,
but, sir, I don=t recall being
asked.  And, no, sir, I don=t recall responding to
that question. 

 

Officer
Goodman also testified that in neither the narrative=s or DWI
case report=s Aprobable
cause@
sections did he write that he suspected Appellant might not be paying
attention, might be suffering from a medical condition, or may be intoxicatedCnor did
he write about his training and experience that caused him to believe Appellant
might be intoxicated as a result of his observations.  He explained that he Amerely
documented things that could lead [him] to believe that was what was occurring.@  In the three-page narrative, he wrote that
the probable cause for the stop of Appellant=s
vehicle was:

[t]hat it came very close to striking a curb in the area where signal
light post which controls northbound traffic intersection is located, that it
had to take evasive action and avoid striking the post and curb and drove with
both left-side tires . . . in lane designated as left-turn only lane. 

 

In his DWI Case Report, Officer
Goodman wrote: AFailed to drive in single laneCalmost
struck curb/drove straight through lane designated left turn,@  under the subheading of AProbable
cause/reasonable suspicion for stop.@ 

  However, Officer Goodman testified that his Aexperience,
working wrecks and doing DWI enforcement@ led to
his belief that the Appellant might be intoxicated.  Officer Goodman further testified: 








I mean, it=s very,
very common to see a vehicle not stay in the one lane when a person=s
intoxicated.  I can=t list
all the cases that I=ve had in the past to suggest
that, but I=ve got lots of pictures of cars
wrapped around poles andCwhich have struck curbs, which
has taken faulty evasive action, as a result of being in the wrong lane, which
resulted in a collision. 

Officer
Goodman agreed that he had no knowledge of where Appellant had been that
evening or that she needed medical assistance. 
However, he also said he did not draw a conclusion that Appellant was
intoxicated based on her driving:

Q: Do you believe it=s important to put in a DWI case report and a DWI
narrative your conclusions regarding a person=s being intoxicated?

 

A: Yes, sir.

 

Q: And do you believe that it=s important to put in there the facts that
support those conclusions?

 

A: Yes, sir.

 

Q: But you did not recite in either one of those, either the DWI case
report or the narrative, a conclusion that you thought she was intoxicated
because of her driving habits; isn=t that right?

 

A: Sir, I didn=t form that conclusion by
observing her driving. 

 

At the conclusion of the
hearing, the trial court denied Appellant=s motion
to suppress without making findings of fact or conclusions of law.  








At
trial, Appellant pleaded not guilty to the DWI charge.  On cross-examination, Officer Goodman
admitted he testified under oath at Appellant=s ALR
proceeding that he had reason to believe Appellant violated a traffic law by
failing to maintain a single lane of traffic; that he also thought Appellant
was either A(a) intoxicated, (b) having a
medical condition, or (c) just not paying attention to the roadway@; and
that he was Atestifying [to] the same thing
[at trial] as [he] was [during the ALR proceeding].@ 

During
the charge conference, Appellant requested a jury instruction pursuant to
article 38.23 of the Texas Code of Criminal Procedure regarding the validity of
Officer Goodman=s stop of Appellant=s
vehicle.  The trial court denied
Appellant=s jury instruction request.  A jury convicted Appellant of DWI, and the
judge sentenced her to a fine of $550 and sixty days in jail, probated to
eighteen months on community supervision.      


III. Discussion

A.  Motion to Suppress








In her
first point, Appellant contends that the trial court erred by denying her
motion to suppress because Officer Goodman=s stop
of Appellant=s vehicle cannot be justified
either by reasonable suspicion to believe Appellant was intoxicated or by the
proper exercise of a police officer=s
community caretaking function.  The State
argues that the evidence shows Officer Goodman had sufficient reasonable
suspicion that a crime was being committed to justify his initial detention of
Appellant and that her failure of the field sobriety tests gave him probable
cause to arrest her for driving while intoxicated. 

1. Standard
of Review








We
review a trial court=s ruling on a motion to suppress
evidence under a bifurcated standard of review. 
Amador v. State, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); Guzman
v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  In reviewing the trial court=s
decision, we do not engage in our own factual review.  Romero v. State, 800 S.W.2d 539, 543
(Tex. Crim. App. 1990); Best v. State, 118 S.W.3d 857, 861 (Tex. App.CFort
Worth 2003, no pet.).  The trial judge is
the sole trier of fact and judge of the credibility of the witnesses and the
weight to be given their testimony.  Wiede
v. State, 214 S.W.3d 17, 24B25 (Tex.
Crim. App. 2007); State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App.
2000), modified on other grounds by State v. Cullen, 195 S.W.3d 696
(Tex. Crim. App. 2006).  Therefore, we
give almost total deference to the trial court=s
rulings on (1) questions of historical fact, even if the trial court=s
determination of those facts was not based on an evaluation of credibility and
demeanor, and (2) application‑of‑law‑to‑fact questions
that turn on an evaluation of credibility and demeanor.  Amador, 221 S.W.3d at 673; Montanez
v. State, 195 S.W.3d 101, 108B09 (Tex.
Crim. App. 2006); Johnson v. State, 68 S.W.3d 644, 652B53 (Tex.
Crim. App. 2002).  But when
application-of-law-to-fact questions do not turn on the credibility and
demeanor of the witnesses, we review the trial court=s
rulings on those questions de novo.  Amador,
221 S.W.3d at 673; Estrada v. State, 154 S.W.3d 604, 607 (Tex. Crim.
App. 2005); Johnson, 68 S.W.3d at 652B53.

When the
record is silent on the reasons for the trial court=s
ruling, or when there are no explicit fact findings and neither party timely
requested findings and conclusions from the trial court, we imply the necessary
fact findings that would support the trial court=s ruling
if the evidence, viewed in the light most favorable to the trial court=s
ruling, supports those findings.  State
v. Garcia-Cantu, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008); see
Wiede, 214 S.W.3d at 25.  We then
review the trial court=s legal ruling de novo unless
the implied fact findings supported by the record are also dispositive of the
legal ruling.  State v. Kelly, 204
S.W.3d 808, 819 (Tex. Crim. App. 2006).








We must
uphold the trial court=s ruling if it is supported by
the record and correct under any theory of law applicable to the case even if
the trial court gave the wrong reason for its ruling.  State v. Stevens, 235 S.W.3d 736,
740  (Tex. Crim. App. 2007); Armendariz
v. State, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), cert. denied,
541 U.S. 974 (2004).  The historical
facts in this case are not disputed; therefore, we review the ruling on the
motion to suppress de novo.  See Oles
v. State, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999).

In
reviewing the suppression determination, we are deferential to the trial court
and will reverse only if the decision is unsupported by the record.  Upton v. State, 853 S.W.2d 548, 553
(Tex. Crim. App. 1993).  In determining
whether a trial court=s decision is supported by the
record, we generally consider only the evidence adduced at the suppression
hearing because the ruling was based on it rather than evidence introduced
later.  Rachal v. State, 917
S.W.2d 799, 809 (Tex. Crim. App.), cert. denied, 519 U.S. 1043 (1996); Hardesty
v. State, 667 S.W.2d 130, 133 n.6 (Tex. Crim. App. 1984).  However, this general rule is inapplicable
when the suppression issue has been consensually re-litigated by the parties
during trial on the merits.  Rachal,
917 S.W.2d at 809.  Where the State
raises the issue at trial either without objection or with subsequent
participation in the inquiry by the defense, the defendant has made an election
to re-open the evidence, and consideration of the relevant trial testimony is
appropriate in our review.  Id.; see
also Webb v. State, 760 S.W.2d 263, 272 n.13 (Tex. Crim. App. 1988), cert.
denied, 491 U.S. 910 (1989). 

 

 








2.  Applicable Law and Analysis

The
Fourth Amendment[6]
protects against unreasonable searches and seizures.  U.S. Const. amend. IV.  To suppress evidence because of an alleged
Fourth Amendment violation, the defendant bears the initial burden of producing
evidence that rebuts the presumption of proper police conduct.  Torres v. State, 182 S.W.3d 899, 902
(Tex. Crim. App. 2005); Ford v. State, 158 S.W.3d 488, 492 (Tex. Crim.
App. 2005).  A defendant satisfies this
burden by establishing that a search or seizure occurred without a
warrant.  Torres, 182 S.W.3d at
902; Ford, 158 S.W.3d at 492. 
Once the defendant makes this showing, the burden of proof shifts to the
State, which must then establish that the government agent conducted the search
or seizure pursuant to a warrant or that the agent acted reasonably.  Torres, 182 S.W.3d at 902; Ford,
158 S.W.3d at 492.     








A
detention, as opposed to an arrest, may be justified on less than probable
cause if a person is reasonably suspected of criminal activity based on
specific, articulable facts.  Terry v.
Ohio, 392 U.S. 1, 22, 88 S. Ct. 1868, 1880 (1968); Carmouche v. State,
10 S.W.3d 323, 328 (Tex. Crim. App. 2000).[7]  Reasonable suspicion exists when, based on
the totality of the circumstances, the officer has specific, articulable facts
that when combined with rational inferences from those facts, would lead him to
reasonably conclude that a particular person is, has been, or soon will be
engaged in criminal activity.  Ford,
158 S.W.3d at 492.  This is an objective
standard that disregards any subjective intent of the officer making the stop
and looks solely to whether an objective basis for the stop exists.  Id.  


Because
the trial court did not file findings of fact and conclusions of law, we must
determine whether the evidence, viewed in the light most favorable to the trial
court=s
decision to deny the motion to suppress, supports implied findings supporting
that decision.  See Kelly, 204
S.W.3d at 819.  In other words, we must
determine whether Officer Goodman testified to specific, articulable facts
justifying his detention of Appellant.  See
id.








Appellant=s
argument asks us to judge the validity of the stop based on Officer Goodman=s
mistaken subjective belief that Appellant committed a traffic violation.  Appellant contends that even though Officer
Goodman testified that he had three possible reasons for stopping Appellant=s
vehicle, the fact that Officer Goodman did not include this information in his
contemporaneous reports shows that he was being untruthful.

However,
the trial court obviously believed Officer Goodman=s
testimony, and we must defer to its assessment of Officer Goodman=s
credibility.  Ross, 32 S.W.3d at
855.  Thus, we must take as true Officer
Goodman=s
testimony that he thought Appellant could have been intoxicated based upon his
training and the specific instances of Appellant=s
driving he observed.  Hughes v. State,
No. 02-07-00370-CR, 2008 WL 4938278, at *3 (Tex. App.CFort
Worth Nov. 20, 2008, pet. ref=d) (mem.
op., not designated for publication). 
And, as stated above, we must determine whether reasonable suspicion
existed based upon an objective standard considering the totality of the
circumstances, not upon the officer=s
subjective intent in making the stop.  Ford,
158 S.W.3d at 492.  Thus, we must
determine whether the objective facts testified to by Officer Goodman show that
he had reasonable suspicion to justify stopping Appellant, regardless of the
reasons stated in his report.  Curtis
v. State, 238 S.W.3d 376, 380B81 (Tex.
Crim. App. 2007).








Here,
Officer Goodman observed Appellant abruptly swerve to the left to avoid a curb
shortly after 2:00 a.m., which is when local bars closed.  Appellant also failed to drive the car within
a single lane of traffic, moving Athe
majority of the vehicle@ into a designated left-turn
lane while continuing to drive straight. 
Officer Goodman testified that based on his experience, narrowly
avoiding a curb with such a quick movement and failing to remain in a single
lane were signs of possible intoxication.  


Appellant
argues that these observations do not constitute evidence of fact-specific
conduct of intoxication, and thus, Officer Goodman had no reasonable suspicion
to stop Appellant=s vehicle.  Appellant relies on Bass v. State,[8]
State v. Arriaga,[9]
State v. Tarvin,[10]
and Hernandez v. State.[11]









In Bass
and Hernandez, the State failed to carry its burden to show
articulable facts that demonstrated the reasonableness of the stop of
appellants= vehicles on the basis of a
suspicion appellants were intoxicated because the officer neither testified
that, based on his experience, he subjectively suspected appellants of being
intoxicated, nor that anything about the objective circumstancesCtime,
location, or the vehicle=s movementCwould
have led a reasonable officer to suspect [appellants] were intoxicated.  Bass, 64 S.W.3d at 650; Hernandez,
983 S.W.2d at 870.   

The Arriaga
court held that the State had failed to present specific facts that
characterized the appellant=s
driving as indicative of intoxication to justify a reasonable stop when the
officer was unable to testify with any certainty the number of times he
observed appellant=s vehicle drift within his
lane.  Arriaga, 5 S.W.3d at
807.  In Tarvin, the court noted
that, although the officer observed Tarvin=s
weaving within his own lane of traffic, the officer Anever
testified that he was conducting an investigatory stop, nor did he testify to
suspecting any criminal activity other than weaving out of the lane.@  Tarvin, 972 S.W.2d at 912.

Here,
unlike the facts in the above cases, Officer Goodman testified that, based on
his training and experience, he believed that Appellant might be driving while
intoxicated given the specific manner in which she operated the vehicle in
conjunction with the time of night and location.  In addition, he testified that he stopped the
vehicle to investigate why Appellant was driving erratically. 








We find
the facts in this case similar to Hughes v. State, in which this court
concluded an officer testified to specific, articulable facts that would lead a
reasonable person to conclude that the car=s driver
was possibly driving while intoxicated. 
2008 WL 4938278, at *4.  In Hughes,
the driver had trouble remaining in a single lane of traffic, almost ran into a
curb, and drove well below the speed limit around 2:00 a.m., when local bars
were closing.  However, unlike the
officer in Hughes, Officer Goodman did not testify that the sole reason
for stopping Appellant=s car was failure to maintain a
single lane of travel.  Id. (McCoy,
J., dissenting).  Officer Goodman instead
testified that he had multiple reasons for stopping Appellant, including
reasonable suspicion to believe Appellant might be driving while intoxicated. 

In
addition, we find these facts distinguish this case from Fowler, in
which this court determined the facts testified to by the officer initiating
the traffic stop, even if believed by the trial court, were not sufficient to
establish reasonable suspicion of either DWI or a violation of the Texas
Transportation Code.  Fowler v. State,
266 S.W.3d 498, 504B05 (Tex. App.CFort
Worth 2008, pet. ref=d) (en banc) (holding that an
officer=s honest
but mistaken understanding of the traffic law, which was the sole reason for
making the stop, is not an exception to the reasonable suspicion requirement). 








Viewing
the evidence in the light most favorable to the trial court=s
ruling, we hold that Officer Goodman testified to specific, articulable facts
that would lead a reasonable person to conclude that Appellant was possibly
driving while intoxicated.  Curtis,
238 S.W.3d at 380B81; James v. State, 102
S.W.3d 162, 172 (Tex. App.CFort
Worth 2003, pet. ref=d). Thus, the trial court did
not abuse its discretion by finding that Officer Goodman had reasonable
suspicion to stop Appellant, and it properly denied Appellant=s motion
to suppress.  We overrule Appellant=s first
point.

B. Trial
Court=s Denial of Jury Instruction

In her
second point, Appellant argues that the trial court erred by denying her
request to instruct the jury to disregard any illegally obtained evidence.[12]  See Tex. Code Crim. Proc. Ann. art.
38.23(a) (Vernon 2005).  Appellant
contends she was denied her right to have the jury make a factual finding
because her requested jury instruction addressed the factual basis for the
legitimacy of Officer Goodman=s stop
of Appellant=s vehicle.  The State counters that there was no material
fact issue concerning the lawfulness of Officer Goodman=s stop. 








Under
article 38.23 of the code of criminal procedure, no evidence obtained in
violation of the federal or state constitutions or laws may be admitted in
evidence against the accused.  Id.  When the evidence raises an issue regarding a
violation, the jury must be instructed that if it believes, or has a reasonable
doubt, that the evidence was obtained in violation of the law, it must
disregard the illegally obtained evidence. 
Id.  A defendant=s right
to the submission of a jury instruction under article 38.23 is limited to
disputed issues of fact that are material to her claim of a constitutional or
statutory violation that would render evidence inadmissible.  Madden v. State, 242 S.W.3d 504, 509B10 (Tex.
Crim. App. 2007).  To raise a disputed
fact issue warranting an article 38.23(a) jury instruction, there must be some
affirmative evidence that puts the existence of that fact into question.  Id. at 513.  AA fact
issue about whether evidence was legally obtained may be raised >from any
source, and the evidence may be strong, weak, contradicted, unimpeached, or
unbelievable.=@  Garza 
v. State, 126 S.W.3d 79, 85 (Tex. Crim. App. 2004) (citing
Wilkerson v. State, 933 S.W.2d 276, 280 (Tex. App.CHouston
[1st Dist.] 1996, writ ref=d)).  If there is no dispute regarding the factual
basis for the challenged seizure, then the legality of the conduct is
determined by the trial judge aloneCas a
question of lawCand a jury instruction is
inappropriate.  Madden, 242 S.W.3d
at 510; Garza, 126 S.W.3d at 85. 








Appellant=s
requested jury instruction raises a question of law because it does not contest
any of the essential facts that led Officer Goodman to stop her vehicle.  See Brooks v. State, 707 S.W.2d 703,
706 (Tex. App.CHouston [1st Dist.] 1986, pet.
ref=d)
(stating that where the essential facts concerning a search or an arrest are
not in dispute, the legality of the search or arrest is a question of
law).  Appellant testified she was at an
establishment that served alcohol until the establishment=s 2:00
a.m. closing time.  She also testified
that this establishment was less than a mile from the intersection where she
had to Amove
[her] car, the steering wheel, towards the left@ because
she almost hit the curb.[13]  Appellant also admitted the left tires of her
vehicle and part of her vehicle later moved into the designated left-turn
lane.  On cross-examination, Appellant
agreed that her driving behavior gave Officer Goodman Aa reason
to want to pull me over.@ 
Thus, Appellant did not dispute any pertinent fact that Officer Goodman
stated he relied on in forming a reasonable suspicion Appellant might be
driving while intoxicated, and the record contains no affirmative evidence
placing the existence of a material fact to Appellant=s claim
of a constitutional or statutory violation into question.  See Madden, 242 S.W.3d at 513; see
Brooks, 707 S.W.2d at 706.  








Appellant
contends that on cross-examination, Officer Goodman admitted he stopped the
vehicle for having violated a traffic lawCnot for
any of the three reasons he stated in his direct testimonyCand that
his conflicting testimony raised a material fact issue for the jury.  However, a cross-examiner=s
questions do not create a conflict in the evidence, although the witness=s
answers to those questions might.  Madden,
242 S.W.3d at 513.  Even the most
vigorous cross-examination implying that Officer Goodman was lying about why he
stopped Appellant does not raise a disputed issue.  See id. at 514; Cerda v.
State, 68 S.W.3d 212, 217 (Tex. App.CHouston
[1st Dist.] 2002, pet. ref=d)
(impeachment of officer as to why he stopped a driver did not create a factual
dispute for purposes of art. 38.23(a)); see also Trent v. State, 925
S.W.2d 130, 133 (Tex. App.CWaco
1996, no writ) (holding cross-examination of officer did not raise factual
dispute for purposes of article 38.23(a) and rejecting defendant=s
contention that although Ahe did not present any
controverting evidence on the legality of the arrest, . . . he sufficiently
attacked the credibility of [witness] to require an instruction); 40 George E.
Dix & Robert O. Dawson, Criminal Practice and Procedure ' 4.194
(2d ed. 2001) (noting that Aa fact
issue is not generated by the possibility that the jury may disbelieve all or
some of [the State=s] testimony@).  








Here, a
thorough review of the record reveals that Officer Goodman=s
answers to trial counsel=s questions on cross-examination
were insufficient to warrant an article 38.23(a) jury instruction because his
responses failed to raise a disputed fact issue for the challenged detention.  See Madden, 242 S.W.3d at 513.  Officer Goodman admitted that he testified
during the May 2008 ALR hearing that he believed he had probable cause to
believe Appellant violated a traffic law by failing to remain in her lane.  However, Officer Goodman did not agree with
Appellant=s trial counsel that Appellant=s
inability to remain in her lane was the sole reason he stopped Appellant; he
recalled it was only Aone of the things@ that
gave him reasonable suspicion to stop Appellant=s car to
determine if she was driving while intoxicated. 
As in Cerda and Trent, an implication arising by questions
posed during cross-examination that Officer Goodman was untruthful does not
raise a factual dispute requiring an article 38.23(a) jury instruction.  See Cerda, 68 S.W.3d at 217; Trent,
925 S.W.2d at 133.   

Appellant
was not entitled to her requested jury instruction because there was no
conflict in the evidence that raised a disputed fact issue material to the
legal question of whether Officer Goodman could stop Appellant.  Appellant=s
requested instruction instead asked the jury to make a legal
determination.  See  Madden, 242 S.W.3d at 510.  Therefore, we overrule Appellant=s second
point.








IV. Conclusion

Having
overruled both of Appellant=s
points, we affirm the trial court=s
judgment.

 

 

ANNE GARDNER

JUSTICE

 

PANEL:  GARDNER, WALKER, and
MCCOY, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  March 25, 2010











[1]See Tex. R. App. P. 47.4.





[2]Officer Goodman testified
the call was for an alarm or loud disturbance. 





[3] The trial court admitted
the video into evidence and granted permission to publish it during the hearing
without objection.  Officer Goodman
testified that he captured video footage of Appellant=s car moving through the
intersection and almost striking the curb because the video camera is always on
and records footage from thirty seconds before the camera=s activation.  The jury also viewed the video. 





[4]Officer Goodman testified
Appellant slurred her speech, smelled of alcohol, performed the standardized
field sobriety tests poorly, and had lost the normal use of her mental and
physical faculties. 





[5]Appellant=s testimony at trial is
almost identical to the testimony he presented during the hearing on Appellant=s motion to suppress.





[6]Appellant makes no
argument that the stop violates the Texas Constitution independent of the
protection afforded by the Fourth Amendment. 
See, e.g., Hulit v. State, 982 S.W.2d 431, 437 (Tex. Crim. App.
1998).  Therefore, we analyze Appellant=s claim solely under the
Fourth Amendment.  See State v. Guzman,
959 S.W.2d 631, 633 (Tex. Crim. App. 1998).  






[7]Because a routine traffic
stop typically involves only a short, investigative detention, as opposed to a
custodial arrest, we analyze traffic stops under the principles developed for
investigative detentions set forth in Terry, 392 U.S. at 22, 88 S. Ct.
at 1880; see Berkemer v. McCarty, 468 U.S. 420, 104 S. Ct. 3138 (1984); Martinez
v. State, 236 S.W.3d 361, 369 (Tex. App.CFort Worth 2007, no pet.).





[8]64 S.W.3d 646 (Tex. App.CTexarkana 2001, pet. ref=d).





[9]5 S.W.3d 804 (Tex. App.CSan Antonio 1999, pet.
ref=d).





[10]972 S.W.2d 910 (Tex. App.CWaco 1998, pet. ref=d).





[11]983 S.W.2d 867 (Tex. App.CAustin 1998, pet. ref=d).





[12]Appellant made a verbal
request for the instruction during the charge conference. 





[13]Appellant testified that
she almost hit the curb after being distracted because her cell phone Awent off.@  However, upon being stopped, she did not tell
Officer Goodman about her cell phone going off and admitted to him that she
could hear herself slurring her words.